644 A.2d 564

HILLSDALE PBA LOCAL 207, PLAINTIFF–APPELLANT,
v. BOROUGH OF HILLSDALE, DEFENDANT–
RESPONDENT.

Argued January 3, 1994—Decided May 17, 1994.

*Leon B. Savetsky* argued the cause for appellant (*Loccke & Correia,* attorneys).

*Raymond R. Wiss* argued the cause for respondent (*Wiss & Cooke,* attorneys; *Mr. Wiss* and *Thomas K. Bouregy, Jr.,* on the brief).

*James R. Zazzali* argued the cause for *amicus curiae* New Jersey State Policemen's Benevolent Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys).

*Gerald L. Dorf* argued the cause for *amicus curiae* New Jersey State League of Municipalities.

*Robert E. Anderson* argued the cause for *amicus curiae* Public Employment Relations Commission.

*Raymond G. Heineman, Jr.,* submitted a brief on behalf of *amicus curiae* Fire Fighters Association of New Jersey (*Kroll & Gaechter,* attorneys; *Mr. Heineman* and *James P. Madden,* on the brief).

*Stephen E. Trimboli* submitted a brief on behalf of *amicus curiae* New Jersey Association of Counties (*Genova Burns,* attorney).

*Steven S. Glickman* and *Mark S. Ruderman* submitted letters in lieu of briefs on behalf of *amicus curiae* New Jersey Conference of Mayors and Bergen Municipal Coalition (*Ruderman & Glickman,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

This case, like its companion case, *Township of Washington v. New Jersey State Policemen's Benevolent Ass'n, Local 206,* 137 *N.J.* 88, 644 *A.*2d 573 (1994), involves the sufficiency of a compulsory-interest-arbitration award. Petitioner, Hillsdale PBA Local

207 (Local 207 or the PBA), and respondent, Borough of Hillsdale (the Borough or Hillsdale), could not agree on the terms of a collective-negotiation agreement for the Borough police force for the years 1991, 1992, and 1993. Pursuant to *N.J.S.A.* 34:13A–14 to –21, an amendment to the Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21, commonly known as the Compulsory Interest Arbitration Act (the Act), Local 207 petitioned the Public Employment Relations Commission (PERC) to initiate interest arbitration. *N.J.S.A.* 34:13A–16 (section 16) requires the arbitrator to choose between the parties' final offers. The arbitrator chose Local 207's offer, and the Chancery Division confirmed the award. The Appellate Division reversed, 263 *N.J.Super.* 163, 622 *A.*2d 872 (1993), vacating the award and remanding the matter for a new hearing before a new arbitrator. We granted Local 207's petition for certification, 134 *N.J.* 478, 634 *A.*2d 525 (1993), and now affirm in part, reverse in part, and remand for further arbitration.

–I–

This case arises from a salary dispute between a municipality and its police department, but its resolution inevitably will affect the public. In an era of rising costs and budget caps, a municipality feels the initial impact of salary increases for police and fire departments. The taxpayers, however, feel the ultimate effect. Generally speaking, salary and related costs constitute a large part of a municipal budget. According to the Borough, most of those costs are attributable to police and fire departments. The Borough contends that police and fire department salary increases have exceeded increases for other public and private employees and have outstripped the cost of living. From its perspective, police and fire fighters have received disproportionately high wage increases. From another perspective, police and fire fighters perform essential public services, often at great risk and with little recognition. Accordingly, we proceed with an appreciation for the services that police and fire departments render and for the

Legislature's attempt to limit the amount that arbitrators may order municipalities to pay for them. We also appreciate the public concern over the mounting costs of state and local government. Control of these costs, however, primarily rests in the hands of other branches and levels of government.

In their negotiations, Hillsdale and Local 207 resolved all non-economic issues for the 1991–93 collective contract, but not two economic issues concerning salary increases and the "banking" of compensatory time beyond a calendar year. In response to Local 207's petition, PERC appointed an arbitrator to conduct compulsory interest-arbitration to resolve the two issues.

Hillsdale's last offer proposed banking up to eighty hours of compensatory time and annual salary increases:

| | |
|---|---|
| 1991 | 7% |
| 1992 | 6.5% |
| 1993 | 6.2%. |

By comparison, Local 207's last offer proposed banking up to 100 hours of compensatory time and semi-annual salary increases. Such increases, which are peculiar to police and fire-fighter contracts, compound annual salary increases. Local 207 proposed increases:

| | |
|---|---|
| January 1, 1991 | 5% |
| July 1, 1991 | 3% |
| January 1, 1992 | 4% |
| July 1, 1992 | 4% |
| January 1, 1993 | 3% |
| July 1, 1993 | 4%. |

Section 16g mandates that interest arbitrators, when choosing between two final offers, shall consider eight factors. The factors include the public welfare, comparisons of salaries and conditions of employment to certain other public and private employees, overall compensation, stipulations of the parties, the lawful authority of the municipality, financial effect on the community, the cost of living, and the continuity and stability of police- and fire-department employment.

Before the arbitrator, the dispute centered on a comparison of the parties' final offers with salaries and non-wage benefits paid to police officers in similar communities. Local 207 urged as the appropriate basis for comparison the salary and non-wage benefits of police officers throughout Bergen County. It further contended that even if the comparison were limited to a smaller group of Bergen County communities, the Hillsdale police salaries and benefits were lower. Local 207 argued that, contrary to the trend in similar communities, the Borough's final offer would result in a diminution in salary increases. In addition to the data on comparable employment, the PBA also sought to show that arrests as well as juvenile and motor vehicle offenses had increased in the Borough. Finally, it contended that the Borough had the ability to pay Local 207's final offer.

Hillsdale argued that the salaries of its police department should be compared not with those in communities throughout Bergen County generally, but with salaries of the other nine "Pascack Ten" municipalities (Emerson, Montvale, Old Tappan, Oradell, Park Ridge, River Vale, Washington Township, Westwood, and Woodcliff Lake), a group of communities in northern Bergen County. According to Hillsdale, a comparison with the "Pascack Ten" establishes that the Hillsdale police are well compensated. In Hillsdale, the base pay for police officers with eleven years experience was $49,069 in 1990, the third highest in the "Pascack Ten." Hillsdale's final offer, when compared with the other "Pascack Ten" communities that had negotiated police contracts in 1991, would have made Hillsdale's police officers the second highest paid. Under Hillsdale's last offer, the base pay for an officer with eleven years experience would have been $52,278. Fringe benefits would raise the pay to $73,258, a sum that would have placed Hillsdale first among all communities in the "Pascack Ten." Hillsdale also contended that the police enjoyed more stable and secure employment than other Borough employees and that police salaries were higher than the salaries of those other employees. The Borough pointed out that it had a high tax rate with low assessed valuation per capita, that it depended heavily on

the taxation of residential real estate, and that it had limited land available for development. Finally, it also demonstrated that over the preceding nine years Hillsdale police had received a sixty-six percent salary increase, which far exceeded the forty-six percent increase in the Consumer Price Index over the same period.

The arbitrator quoted section 16g, recited the parties' final offers, and selected Local 207's offer, stating:

> Initially it should be noted that the statutory criteria usually dissolves [sic] into a determination of the more reasonable offer. Rarely is a determination reached under any single criteria [sic] which proves dispositive of the issue in and of itself. In this case the expert testimony established to my satisfaction the Borough's ability to pay. Dr. Werner's [Local 207's expert witness'] credentials were impressive and his testimony was convincing. Undoubtedly any award of wages will have an impact on the Borough but no substantially detrimental result was proven by the Borough.
>
> Analyzing the numerous exhibits, particularly those relating to comparability— whether narrow and limited to "The Pascack Ten" or viewed county-wide, leads me to the inevitable conclusion that the increases sought by the PBA are reasonable. The only issue remaining is whether it is the *more* reasonable of the two.
>
> The Association has met that burden also—*i.e.,* proving that its offer is more reasonable. A review of the comparables shows that the Association's request is modest. Although one can certainly question the level of increase in light of the current economic times, nevertheless, this is the neighborhood out there. Clearly the PBA's offer is midstream.... Had circumstances been demonstrated that would have created financial difficulties, or operational problems or any difficulty created or worsened by the award of the PBA Last Offer, then Hillsdale's offer may well have been deemed the more reasonable.

Although the Chancery Division confirmed the award, the Appellate Division reversed, finding that the arbitrator's decision was flawed and not supported by substantial credible evidence. 263 *N.J.Super.* at 187–88, 622 *A.2d* 872. The court determined that the parties' failure to adduce evidence on each of the section 16g factors did not excuse the arbitrator from obtaining such evidence. *Id.* at 185, 622 *A.2d* 872. Reasoning that under section 16g each factor was presumptively relevant, the court required arbitrators to compel the parties to produce evidence on each factor and to provide a factor-by-factor analysis of their final offers. The Appellate Division explained:

> A presumption that all of the statutory factors are relevant requires parties to submit evidence on each subject, either to negate or reinforce a given factor's

relevance. This would afford a proper basis for public interest arbitrators to make an informed decision as to relevance. As a corollary, the interest arbitrators must detail in their opinions the specific reasons why an enumerated factor is not "judged relevant" in arriving at a final determination. This would also facilitate judicial review of public sector interest arbitration awards. *See N.J.S.A.* 34:13A–16f(5). We do not hold that each factor be accorded *equal* weight. We merely require that the arbitrator's award indicate what factors are deemed relevant, satisfactorily explain why a certain factor (or factors) is not relevant, and provide an analysis of the evidence on each relevant factor.

[*Id.* at 186, 622 *A.*2d 872.]

The court found "from a review of the statutory factors, neither the parties nor arbitrators sufficiently considered the statutory factors set forth in *N.J.S.A.* 34:13A–16g." *Id.* at 187, 622 *A.*2d 872. It then detailed the deficiencies of the arbitrator's award in a factor-by-factor analysis. *Id.* at 188–96, 622 *A.*2d 872.

–II–

In general, compulsory interest arbitration is a statutory method of resolving collective-negotiation disputes between police and fire departments and their employers. Unlike "grievance" arbitration, which is a voluntary method of resolving disputes under an existing contract, compulsory interest arbitration does not depend on either the existence of a contract or on the agreement of the parties to proceed to arbitration. *New Jersey State Policemen's Benevolent Ass'n, Local 29 v. Town of Irvington,* 80 *N.J.* 271, 284, 403 *A.*2d 473 (1979). It is a statutorily-mandated procedure for resolving the terms of a new contract.

If the parties reach an impasse in negotiations, either party may initiate compulsory interest arbitration by filing a petition with PERC. *N.J.S.A.* 34:13A–16b. PERC and the parties then select an arbitrator from a panel of arbitrators maintained by PERC. *N.J.S.A.* 34:13A–16e; *N.J.A.C.* 19:16–5.6. The parties may also select which terminal procedure the arbitrator will use to resolve the issues in dispute. *N.J.S.A.* 34:13A–16b and –16c. These procedures include, but are not limited to, conventional arbitration, arbitration confined to a choice between the last offers of the parties as a single package, and last-offer arbitration on an issue-

by-issue basis. *N.J.S.A.* 34:13A–16c. If the parties cannot agree on a terminal procedure, the parties are confined to the last-offer procedure. *N.J.S.A.* 34:13A–16d. Economic disputes, those that involve salaries, insurance, vacations, holidays, and other items having a direct relationship to employee income and can be readily calculated, are resolved as a single package; non-economic issues are resolved on an issue-by-issue basis. *N.J.S.A.* 34:13A–16d(2).

█ The purpose of the last-offer alternative is to encourage both parties to negotiate reasonably and to narrow their differences. Fear that the arbitrator will select the other party's offer provides each party with an incentive to be fair and reasonable. Robert J. Martin, *Fixing the Fiscal Police and Firetrap: A Critique of New Jersey's Compulsory Interest Arbitration Act,* 18 *Seton Hall Legis.J.* 59, 72 (1993). Ideally, the offers will converge and the parties can avoid arbitration. *Ibid.* Although the Act does not expressly provide for revision of offers during the process of arbitration, both this Court, *Newark Firemen's Mut. Benevolent Ass'n, Local No. 4 v. City of Newark,* 90 *N.J.* 44, 53, 447 *A.*2d 130 (1982), and PERC, *N.J.A.C.* 19:16–5.7(f) and –5.7(k), have recognized that the parties may revise their last offers and enhance their factual support at any time before the conclusion of the hearing. *See also* Martin, *supra,* 18 *Seton Hall Legis.J.* at 79 (stating that " 'the arbitrator may at his or her discretion accept a revision of position by either party on any issue until a hearing has been deemed closed provided that the other party is given the opportunity to respond. The arbitrator can, therefore, permit the flow of negotiations to continue if the parties so desire while maintaining the authority to bring negotiations to a halt if they are not fruitful and place the burden of proof on the parties to support their final positions.' ") (quoting James W. Mastriani, *Interest Arbitration for Protective Services in New Jersey,* New Jersey Public Employer–Employee Relations No. 6, at 27 (New Jersey Institute of Management and Labor Relations, Rutgers University, 1977)). The arbitrator may also supplement the factual record by issuing subpoenas to require the attendance of witnesses and

the production of documents. *See N.J.S.A.* 34:13A–17; *N.J.A.C.* 19:16–5.7(d).

■ In reaching a decision, the arbitrator must choose between the parties' final offers. As stated above, section 16g lists eight factors that arbitrators must consider in making that choice. In general, the relevance of a factor depends on the disputed issues and the evidence presented. The arbitrator should determine which factors are relevant, weigh them, and explain the award in writing. *N.J.S.A.* 34:13A–16f(5); *N.J.A.C.* 19:16–5.9. In brief, the arbitrator's opinion should be a reasoned explanation for the decision.

■ Either party may institute judicial proceedings to enforce the award. *N.J.S.A.* 34:13A–19 and –20. Generally speaking, the standard that governs judicial review of interest arbitration is whether the award is supported by substantial credible evidence in the record as a whole. *Town of Irvington, supra,* 80 *N.J.* at 294, 403 *A.*2d 473. Judicial scrutiny in public interest arbitration is more stringent than in general arbitration. The reason for more intensive review of public interest arbitration is that such arbitration is statutorily-mandated and public funds are at stake. *Division 540, Amalgamated Transit Union, AFL–CIO v. Mercer County Improvement Auth.,* 76 *N.J.* 245, 253, 386 *A.*2d 1290 (1978). Accordingly, a reviewing court may vacate an award when the decision fails to give "due weight" to the section 16g factors, *Town of Irvington, supra,* 80 *N.J.* at 295, 403 *A.*2d 473, when the award has been procured by corruption, fraud, or undue means, *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 220, 405 *A.*2d 393 (1979), when arbitrators have refused to hear relevant evidence or committed other prejudicial errors, *ibid.,* or when arbitrators have so imperfectly executed their powers that they have not made a final award, *ibid.*

■ Although compulsory interest arbitration is essentially adversarial, the public is a silent party to the process. Compulsory interest arbitration of police and fire fighters' salaries affects

the public in many ways, most notably in the cost and adequacy of police and fire-protection services. Indeed, section 16g expressly requires the arbitrator to consider the effect of an award on the general public. *See Division 540, supra,* 76 *N.J.* at 252, 386 *A.2d* 1290 (stating that arbitrators must consider public interest and public welfare). Hence, an award runs the risk of being found deficient if it does not expressly consider "[t]he interests and welfare of the public." *N.J.S.A.* 34:13A–16g(1).

Our concern in the present case is with the adequacy of the arbitrator's award, a concern that involves both the sufficiency of the evidence and the relevance of the various section 16g factors. Section 16g provides:

The arbitrator or panel of arbitrators shall decide the dispute based on a reasonable determination of the issues, giving due weight to those factors listed below that are judged relevant for the resolution of the specific dispute:

(1) The interests and welfare of the public.

(2) Comparison of the wages, salaries, hours, and conditions of employment of the employees involved in the arbitration proceeding with the wages, hours, and conditions of employment of other employees performing the same or similar services and with other employees generally:

(a) In public employment in the same or similar comparable jurisdictions.

(b) In comparable private employment.

(c) In public and private employment in general.

(3) The overall compensation presently received by the employees, inclusive of direct wages, salary, vacation, holidays, excused leaves, insurance and pensions, medical and hospitalization benefits, and all other economic benefits received.

(4) Stipulations of the parties.

(5) The lawful authority of the employer.

(6) The financial impact on the governing unit, its residents and taxpayers.

(7) The cost of living.

(8) The continuity and stability of employment including seniority rights and such other factors not confined to the foregoing which are ordinarily or traditionally considered in the determination of wages, hours, and conditions of employment through collective negotiations and collective bargaining between the parties in the public service and in private employment.

As the statute states, an arbitrator need rely not on all factors, but only on those that the arbitrator deems relevant. An arbitrator should not deem a factor irrelevant, however, without first considering the relevant evidence. An arbitrator who requires addition-

al evidence may request the parties to supplement their presentations. Contrary to the Appellate Division, 263 *N.J.Super.* at 186, 622 *A.*2d 872, however, the arbitrator need not require the production of evidence on each factor. *See N.J.A.C.* 19:16–5.7(d) (stating, "[t]he arbitrator *may* administer oaths, conduct hearings, require the attendance of witnesses and the production of such books, papers, contracts, agreements, and documents *as the arbitrator may deem material* to a just determination of the issues in dispute...." (emphasis added)). Such a requirement might unduly prolong a process that the Legislature designed to expedite collective negotiations with police and fire departments.

■ Whether or not the parties adduce evidence on a particular factor, the arbitrator's opinion should explain why the arbitrator finds that factor irrelevant. Without such an explanation, the opinion and award may not be a "reasonable determination of the issues." *N.J.A.C.* 19:16–5.9. Neither the parties, the public, nor a reviewing court can ascertain if the determination is reasonable or if the arbitrator has given "due weight" to the relevant factors.

■ In concluding that an arbitrator must consider all eight factors, we need not go so far as the Appellate Division, which presumed each factor to be relevant to every dispute. 263 *N.J.Super.* at 186, 622 *A.*2d 872. A requirement that an arbitrator find facts on each factor, even those deemed irrelevant, would undermine the purpose of arbitration as an expeditious means of resolving contract negotiations. We believe we come closer to satisfying the legislative intent by requiring arbitrators to identify and weigh the relevant factors and to explain why the remaining factors are irrelevant. A reasoned explanation along those lines should satisfy the requirement for a decision based on "those factors" that are "judged relevant." Also, such an explanation should satisfy the requirement that the arbitrator "give due weight" to each factor. Anything less could contravene the Act's provision for vacating an award "for failure to apply the factors specified in subsection g....." *N.J.S.A.* 34:13A–16f(5). In sum, an arbitrator's award should identify the relevant factors, analyze

the evidence pertaining to those factors, and explain why other factors are irrelevant.

One of the problems in this case, as in *Township of Washington, supra,* 137 *N.J.* 88, 644 *A.*2d 573 results from the arbitrator's emphasis on a comparison of salaries and benefits of police and fire departments in similar communities. As Professor Martin writes, "local officials believe that arbitrators give excessive weight to comparisons of the wages and salaries of a particular municipality with those of neighboring jurisdictions." Martin, *supra,* 18 *Seton Hall Legis.J.* at 62. An examination of section 16g reveals that the Legislature did not intend that any one factor would be dispositive. Section 16g(2) expressly requires:

> Comparison of the wages, salaries, hours, and conditions of employment of the employees involved in the arbitration proceedings with the wages, hours, and conditions of employment of other employees performing the same or similar services and with other employees generally:
>
> (a) In public employment in the same or similar comparable jurisdictions.
>
> (b) In comparable private employment.
>
> (c) In public and private employment in general.

The terms of section 16g require more than a comparison of police salaries in other communities. Section 16g(2) invites comparison with other jobs in both the public and private sectors. The arbitrator should also consider the relationship between any such increases and increases in comparable areas of private employment. Having considered such additional information, an arbitrator may still conclude that police and fire-fighters' salaries in similar municipalities provide the most relevant comparables. If so, the arbitrator should set forth the reasons supporting that conclusion. Missing from the subject award is a reasoned explanation for accepting the PBA's submission of the salary increases from other municipalities. Also missing is an explanation for rejecting other bases for comparison.

Another problem concerns the meaning of the factor pertaining to "[t]he financial impact on the governing unit, its residents and taxpayers." *N.J.S.A.* 34:13A–16g(6). The terms of that factor do not equate with the municipality's ability to pay. As

the Appellate Division noted, "[i]t is not enough to simply assert that the public entity involved should merely raise taxes to cover the costs of a public interest arbitration award." 263 *N.J.Super.* at 188 n. 16, 622 *A.*2d 872.

Here, the arbitrator placed on Hillsdale the burden of proving a substantial detriment from the arbitrator's selection of the PBA's final offer. Section 16g(6), however, does not require a municipality to prove its financial inability to meet the other party's final offer. The statutory direction to consider the financial impact on the municipality demands more than answering the question whether the municipality can raise the money to pay the salary increase. Given the existence of financial constraints and budget caps, *N.J.S.A.* 40A:4–45.2 and –45.3 (setting municipal budget caps), an award to police or fire departments necessarily affects other municipal employees and the entire municipal budget. *See* Martin, *supra,* 18 *Seton Hall Legis.J.* at 70 (stating that "the statutory 'cap' on total municipal spending must be considered in determining an employer's financial capacity").

### –III–

In the present case, the arbitrator's award did not discuss all the section 16g factors. Instead, it unduly emphasized the comparison with police salaries in other communities and inappropriately relied on the Borough's perceived "ability to pay." Although we do not have a transcript of the proceedings, the PBA apparently relied almost exclusively on contracts negotiated between other PBAs and municipalities. Perhaps for this reason the arbitrator, when selecting the last offer of the PBA over that of the Borough, simply recited that "this is the neighborhood out there." Missing from the award is the reasoned explanation required by the Act.

The Chancery Division confirmed the award on December 18, 1991. On May 4, 1992, the court denied Hillsdale's application for a stay, and on May 15, 1992, it granted the PBA's application for an order to enforce litigant's rights. Hillsdale did not seek a stay

from the Appellate Division. Instead, it implemented the award by paying five of the six semi-annual payments authorized by the award. Based on the March 17, 1993, judgment of the Appellate Division vacating the award, however, Hillsdale did not implement the sixth and final payment, which was scheduled to take effect on July 1, 1993. Hillsdale has continued to pay police officers on the basis of the increments that took effect from January 1, 1991, through January 1, 1993. Moreover, two police officers retired in reliance on the award before the date of the Appellate Division decision. Under the circumstances, we believe that the appropriate decision is not to disturb the payments that Hillsdale has made to its police officers. Because Hillsdale never implemented the sixth payment, which was scheduled to take effect on July 1, 1993, we remand the matter to the arbitrator for a hearing limited to the officers' entitlement to that payment. We disagree with the Appellate Division, particularly in light of the limited nature of the remand, that the matter should proceed before a different arbitrator.

We recognize that the result in this case differs from that in the companion case involving the Township of Washington. In that case, however, the Township included a clause in the order enforcing litigant's rights expressly providing for the readjustment of payments if the Township was successful on appeal. The effect of that order was to prevent reliance by the Washington police when accepting the awarded benefits.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded for arbitration limited to choosing between the last offers of the parties for the second half of 1993.

For affirmance in part; reversal in part; remandment—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.