286 N.J. Super. 372 (1996)
669 A.2d 291
TOWNSHIP OF ABERDEEN, PLAINTIFF-RESPONDENT,
v.
PATROLMEN'S BENEVOLENT ASSOCIATION, LOCAL 163, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1995.
Decided January 17, 1996.
*373 Before Judges MICHELS[1], BAIME, and VILLANUEVA.
Sanford R. Oxfeld argued the cause for appellant (Balk, Oxfeld, Mandell & Cohen, attorneys; Mr. Oxfeld, of counsel; Randi Doner, on the brief).
Irving L. Hurwitz argued the cause for respondent (Carpenter, Bennett & Morrissey, attorneys; Mr. Hurwitz, of counsel and on the brief; David A. Cohen, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents a novel question under the Compulsory Interest Arbitration Act (N.J.S.A. 34:13A-14 to -21). The Act and its implementing regulations permit a mediator in a public employment dispute to serve as the arbitrator in the event that mediation efforts are not successful. N.J.S.A. 34:13A-16a and f(3); N.J.A.C. 19:16-5.7(b). We hold that information learned by an arbitrator during the mediation process but not presented at the arbitration hearing may not be considered by the arbitrator in rendering the final decision.

I.
We need not recount the facts at length. This case arises from a dispute between the Township of Aberdeen and the union *374 representing its police officers. For several years, the Township and the union were parties to a series of collective bargaining agreements. Near the expiration of the 1992-1993 contract, the parties entered into negotiations for a successor agreement. When the negotiations reached an impasse, the union petitioned the Public Employment Relations Commission (PERC) to initiate interest arbitration. Prior to commencement of the formal arbitration hearings, the parties agreed at the suggestion of the arbitrator to engage in mediation. Acting as a mediator, the arbitrator met with the parties jointly and individually on six separate occasions over the course of four months.
Unfortunately, mediation efforts were complicated by an incident that occurred during the second session. Apparently, a newspaper article appeared that morning, reporting several areas of contention between the parties. The union believed that the Township had "leaked" this information in order to obtain a political climate more conducive to its position. At the mediation session, the union expressed its outrage concerning this breach on the Township's part of a prior agreement between the parties to maintain confidentiality during the negotiations. However, the union ultimately agreed to continue mediation efforts.
During mediation, both parties agreed upon the need for additional police officers to be hired at an entry level salary below the current salary guidelines. In addition, the Township proposed that the workweek for all police officers be increased from an average of thirty-five hours to forty hours in order to reduce overtime costs and provide greater protection to the public. The additional hours would result in an increase to the base salaries of existing police officers in order to compensate them for the loss of overtime.
On July 14, 1994, the parties entered into a written stipulation permitting the Township to hire additional police officers at a reduced starting salary. The purpose of the stipulation was to allow the Township to hire these individuals immediately so that they could commence training at the police academy rather than *375 waiting six months for the new collective bargaining agreement to be signed. According to the union, the parties also reached an oral understanding that the Township would adopt a forty hour workweek with a corresponding increase in the base salary of existing police officers. The Township's version is markedly different. It claims that it reserved agreement on the proposed revision of the work schedule and the increase in base salaries pending the approval of its Mayor and Council.
Immediately prior to the next scheduled mediation session, the Township announced that it was no longer seeking a forty hour schedule but preferred to remain with the current thirty-five hour work week. Retaining the thirty-five hour week meant that existing officers would lose overtime pay due to the addition of the newly hired officers without receiving the increase to their base pay resulting from a longer work week. The Township also rejected the union's proposed annual increase in base salaries of four and one-half percent. The Township's decision was perceived by the union as an act of bad faith, and mediation efforts terminated at that point.
Following protracted arbitration hearings, the arbitrator issued his report in which he adopted the union's final offer on the outstanding economic issues. Although the arbitrator reviewed each of the statutory factors required to be considered by N.J.S.A. 34:13A-16g, he additionally made repeated references to information received and statements made during the mediation process. None of these references was grounded in the evidence presented at the arbitration hearings. The arbitrator also described in great detail the Township's shifting positions during the mediation process. Clearly exasperated by the Township's breach of confidentiality and its decision to withdraw its proposal for a forty hour work schedule, the arbitrator complained that he had been "exposed to the full rancor of the [union's] leadership." The arbitrator repeatedly returned to these subjects in his discussion of the statutory factors, virtually all of which he found to favor the union's proposal.
*376 The Township filed a complaint in the Chancery Division seeking an order vacating the award, and the union counterclaimed. The matter was decided by summary judgment. The Chancery Division vacated the award on the ground that the arbitrator had impermissibly relied upon information presented only in the mediation proceedings. In reaching this conclusion, the court found that the arbitrator had been improperly influenced by the manner in which the Township had conducted negotiations during the mediation process. The union appeals. We affirm.

II.
Compulsory interest arbitration is a statutory method of resolving collective bargaining disputes between police and fire departments and their employees. Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. 71, 80, 644 A.2d 564 (1994). Unlike grievance arbitration, which involves the consensual submission to arbitration of disputes concerning the interpretation or application of an existing contract, see Tp. of West Windsor v. Public Employment Relations Comm'n, 78 N.J. 98, 393 A.2d 255 (1978); State v. State Supervisory Employees Ass'n, 78 N.J. 54, 393 A.2d 233 (1978), compulsory interest arbitration is statutorily mandated and requires the arbitrator to select the terms of and, in effect, write a new collective bargaining agreement. Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. at 80, 644 A.2d 564; N.J. State P.B.A., Local 29 v. Town of Irvington, 80 N.J. 271, 284, 403 A.2d 473 (1979); Division 540, Amalgamated Transit Union, AFL-CIO v. Mercer County Improvement Auth., 76 N.J. 245, 249, 386 A.2d 1290 (1978). Because fire and police departments do not enjoy the right to strike, compulsory interest arbitration is designed to afford "an alternate, expeditious, effective and binding procedure for the resolution of disputes" between the employees of such departments and their government employers. N.J.S.A. 34:13A-14.
We need not describe the Compulsory Interest Arbitration Act in detail. It suffices to say that interest arbitration is far *377 more structured than grievance arbitration. In the absence of an agreement to the contrary, the arbitrator must select the fairest last offer of the parties as a single package respecting the economic issues in dispute and on an issue-by-issue basis with regard to the outstanding noneconomic issues. N.J.S.A. 34:13A-16d(2). The arbitrator does not have free rein in deciding disputes. Instead, the arbitrator must consider and give "due weight" to eight statutorily mandated factors. N.J.S.A. 34:13A-16g. This process requires the arbitrator "to identify and weigh the relevant factors and to explain why the remaining factors are irrelevant." Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. at 84, 644 A.2d 564. Also, judicial review is more stringent than in grievance arbitration. Either party may institute judicial proceedings to enforce the arbitrator's award. N.J.S.A. 34:13A-19 and -20. The standard of review is whether the award is supported by substantial credible evidence. N.J. State P.B.A., Local 29 v. Town of Irvington, 80 N.J. at 294, 403 A.2d 473. A reviewing court may vacate an award when the arbitrator's decision fails to give "due weight" to the statutory factors, when the award has been procured by corruption, fraud, or undue means, when the arbitrator has refused to admit relevant evidence or has committed other prejudicial errors, or when the arbitrator has imperfectly exercised his or her powers. Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. at 82, 644 A.2d 564. It bears emphasis that the issues to be resolved in such cases directly affect the cost and adequacy of police and fire protection services, and the public is thus a "silent party" to the process. Id. at 82-83, 644 A.2d 564.
Against this backdrop, we conclude that the arbitrator in the present case violated his obligations to act fairly and impartially and to decide the issues solely on the evidence adduced before him at the arbitration hearings. Fred J. Brotherton, Inc. v. Kreielsheimer, 8 N.J. 66, 70, 83 A.2d 707 (1951). The arbitrator improperly held against the Township the negotiating tactics it had employed during the mediation process. As we noted earlier, the arbitrator's report was replete with references to the Township's *378 withdrawal of its proposal to extend the workweek of police officers and increase their base salaries after it had obtained the union's consent to hiring additional personnel at a reduced entry level salary. The arbitrator obviously believed that the Township had taken unfair advantage of the union during mediation. Perhaps, there was some justification for this belief, although that is an issue we need not decide. The point to be stressed is that the arbitrator did not have the right to penalize the Township for its negotiating tactics during mediation in the course of applying the statutory factors and rendering his arbitration award.
We know of no reported decision dealing with this precise issue. However, the conclusion we have reached is compelled by important public policy considerations and by regulations promulgated by PERC. Although mandating arbitration, the Compulsory Interest Arbitration Act "was not intended to ... discourage public employers and their police and firefighting employees from voluntarily resolving their differences." N.J. State P.B.A., Local 29 v. Town of Irvington, 80 N.J. at 285, 403 A.2d 473. Indeed, its provisions do not become operative unless and until negotiations have reached an impasse. See N.J.S.A. 34:13A-16a. Even at this stage, PERC is encouraged to "take such steps including the assignment of a mediator ... [in order] to effect a voluntary resolution of the impasse." N.J. State P.B.A., Local 29 v. Town of Irvington, 80 N.J. at 285, 403 A.2d 473 (quoting N.J.S.A. 34:13A-16(a)). Although the Act does not expressly provide for revision of offers during the process of arbitration, our Supreme Court, Newark Firemen's Mut. Benevolent Ass'n, Local No. 4 v. City of Newark, 90 N.J. 44, 51-53, 447 A.2d 130 (1982), and PERC, N.J.A.C. 19:16-5.7(f) and -5.7(k), has recognized that the parties may revise their last offers and enhance their factual support at any time before the conclusion of the arbitration hearings. See also Hillsdale P.B.A. Local 207 v. Borough of Hillsdale, 137 N.J. at 81, 644 A.2d 564. The importance of mediation is further evidenced by N.J.S.A. 34:13A-16f(3), which provides that "[t]hroughout formal arbitration proceedings the chosen arbitrator ... may mediate or assist the parties in reaching a mutually *379 agreeable settlement." Compulsory arbitration "was thus intended to constitute a `last resort' measure for the resolution of impasses...." N.J. State P.B.A., Local 29 v. Town of Irvington, 80 N.J. at 286, 403 A.2d 473.
Mediation would be a hollow practice if the parties' negotiating tactics could be used against them by the arbitrator in rendering the final decision. The parties should feel free to negotiate without fear that what they say and do will later be used against them. While perhaps the analogy is imperfect, it would be unthinkable for a trial court to base its decision on information disclosed in pretrial settlement negotiations. Indeed, evidence of settlement negotiations, including offers of compromise, is generally inadmissible to prove a party's liability for a claim. N.J.R.E. 408. Such evidence is excluded because it is not relevant to the question of liability and because its admissibility would discourage parties from attempting to settle claims out of court. See Wyatt by Caldwell v. Wyatt, 217 N.J. Super. 580, 586, 526 A.2d 719 (App.Div. 1987). Negotiations during the mediation process should be subject to similar protection. To protect the integrity of mediation, N.J.A.C. 19:16-3.4 provides that "[i]nformation disclosed by a party to a mediator ... shall not be divulged by the mediator voluntarily or by compulsion." In a similar vein, N.J.A.C. 19:16-5.7(c) states that "[i]nformation disclosed by a party to an arbitrator while functioning in a mediatory capacity shall not be divulged by the arbitrator voluntarily or by compulsion." While these regulations are not directly on point, they are further evidence of the strong public interest in protecting the confidentiality of negotiations during mediation so as to ensure the parties to the dispute will feel free to adopt and modify their positions as necessary to reach an agreeable settlement. Permitting arbitrators to use such changes in position in the course of rendering a final arbitration award undermines this sense of freedom that the regulations were designed to encourage.
We conclude that the arbitrator improperly relied upon information he learned during the failed mediation process when rendering *380 his arbitration decision. Accordingly, the judgment of the Chancery Division vacating the arbitrator's award is affirmed.
NOTES
[1] Judge Michels did not participate in the oral argument. However, the parties consented to his participation in the decision.