**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0526-16T4

IN THE MATTER OF STATE OF
NEW JERSEY (DIVISION OF
STATE POLICE),

    Respondent,

v.

STATE TROOPERS FRATERNAL
ASSOCIATION OF NEW JERSEY,

    Appellant.

_____

        Argued April 18, 2018 — Decided July 9, 2018

        Before Judges Alvarez, Nugent and Geiger.

        On appeal from the Public Employment Relations
        Commission, Docket No. IA-2016-003.

        Michael A. Bukosky argued the cause for
        appellant (Loccke, Correia & Bukosky,
        attorneys; Richard D. Loccke and Michael A.
        Bukosky, of counsel and on the brief).

        Steven W. Suflas argued the cause for
        respondent State of New Jersey, Division of
        State Police (Ballard Spahr, LLP, attorneys;
        Steven W. Suflas and Emily J. Daher, on the
        brief).

        Frank C. Kanther, Deputy General Counsel,
        argued the cause for respondent New Jersey

Public Employment Relations Commission (Christine Lucarelli, Acting General Counsel, attorney; David N. Gambert, Deputy General Counsel, on the statement in lieu of brief).

PER CURIAM

Appellant State Troopers Fraternal Association of New Jersey (STFA) appeals from a September 22, 2016 final agency decision of the Public Employment Relations Commission (PERC) modifying a remanded interest arbitration award. The STFA argues PERC erred by modifying the award to eliminate "step increments" (salary increases regularly paid to Troopers pursuant to a salary guide), which were to be paid on the final day of the new collective negotiations agreement (CNA).

The State of New Jersey, Division of State Police (Division) and PERC claim the modification was appropriate because the effect of the arbitrator's award was to circumvent the statutory two percent cap on interest arbitration awards, N.J.S.A. 34:13A-16.7, by granting a salary increase that was not fully accounted for during the term of the CNA but, nonetheless, established a new "base salary" for the next CNA that exceeded the two percent cap. We remand for PERC to reconsider its decision in light of the Supreme Court's subsequent ruling in In re Cty. of Atl., 230 N.J. 237 (2017).

The STFA represents 1633 rank and file State Troopers, holding the ranks of Trooper, Trooper 1, and Trooper 2. The STFA and the Division were parties to a four-year CNA that extended between July 1, 2008 and June 30, 2012, which the parties finalized in September 2011 through interest arbitration.

Pursuant to Article XXIX of the 2008-2012 CNA, the terms of the agreement continued in effect during negotiations for a successor CNA, as follows:

> A. This Agreement shall continue in full force and effect until June 30, 2012, and shall be automatically renewed from year to year thereafter unless either party shall notify the other in writing by certified mail prior to October 1 in the year preceding the contract expiration that it desires to amend the terms of this Agreement. Either party may submit to the other a written list of changes desired in the terms of a successor Agreement.

> B. Should either party notify the other of its desire to amend this Agreement through the procedure in A. above, the terms of this Agreement shall remain in force until the effective date of a successor Agreement, unless one party notifies the other party of its discontinuation within ninety (90) days.

The 2008-2012 CNA also contains a salary advancement schedule, pursuant to which Troopers received step increments until they reached the top step of the top salary range. The salary guide contained nine steps in each of three salary ranges, with salary range seventeen applicable to Troopers, salary range

A-0526-16T4

eighteen applicable to Trooper 2s, and salary range nineteen applicable to Trooper 1s, the highest of the three ranks. The salary guide provided for a twelve-year salary progression, over which time Troopers' salaries would increase by approximately sixty percent.

Upon achieving the top of the salary guide, Troopers would no longer be eligible to receive step increments. However, all Troopers, including those no longer eligible for step increments, were eligible to receive across-the-board (ATB) increases. Under the 2008-2012 CNA, ATB increases were paid, effective July 1 of each contract year, in the following amounts: 2.75% in 2008; 2.5% in 2009; 2.25% in 2010; and 0% in 2011.

Finally, under the 2008-2012 CNA, all members of the State Police, from Troopers up to the Superintendent, also received a unique form of compensation known as "maintenance." No other State government employees receive a maintenance payment. Maintenance payments are phased in over the first three years of a Trooper's employment, with full payment in their third year and each year thereafter. Maintenance payments were increased over the course of the 2008-2012 CNA, congruent with the ATB increases, such that, effective July 1, 2011, the maintenance payment was $13,649.03.

On several occasions in 2013 and 2014, the parties negotiated in an attempt to reach a successor agreement to the 2008-2012 CNA, after which they agreed to engage in factfinding pursuant to N.J.S.A. 34:13A-16(b)(1). On September 23, 2015, after a factfinder had been appointed but before he had issued a factfinding report, the Division filed a petition to initiate compulsory interest arbitration.

PERC appointed Ira Cure as arbitrator, who held hearings between November 30, 2015 and January 4, 2016, hearing testimony from: Sergeant James Kiernan; accountant Michelle LaBruno; Michael Dee, Director of the Governor's Office of Employee Relations; Major Mark A. Wondrack; David Ridolfino, Acting Director of the State Office of Management and Budget; Detective Sergeant Stephen Urbanski; Trooper Michael Zanyor; Trooper Christopher J. Burgos; and Sergeant Frank Serratore. The parties also provided written submissions.[1]

As it relates to this appeal, the hearing record included the previously discussed information regarding Trooper compensation. The record also reflected the Division made a unilateral decision

---

[1]  Much of the hearing evidence is not relevant to the limited issue presented on appeal, that is, the payment of step increments to Troopers not at the maximum of the pay scale.

to stop paying step increments to Troopers, which became effective in pay period 20 in 2015.  At the remand hearing, Dee testified the Division stopped the increments "based on the decision out of PERC [that] dealt with increments."[2]  This decision was a break with past practice and contrary to the terms of Article XXIX of the 2008-2012 CNA.  According to counsel, this issue was also the subject of litigation in the Superior Court and before PERC.

In addition, Kiernan and Burgos testified Troopers had experienced a reduction in their take-home pay due to implementation of the "Chapter 78" contributions to healthcare and pension costs, with Kiernan testifying to a personal loss of more than $9000 per year.[3]  Kiernan stated he was retiring early due to his static wages and the increases in benefit costs, and he knew many others who had made the same decision.  On behalf of the Division, Dee conceded the number of Troopers had decreased from 2010, but he also stated that number has increased in recent years.

At the same time, the two percent hard cap, applicable to interest arbitrations, limited the increases that could be awarded

---

[2]  See In re Cty. of Atl., PERC No. 2014-40, 40 N.J.P.E.R. 285 (¶ 109 2013), rev'd, 445 N.J. Super. 1 (App. Div. 2016), aff'd on other grounds, 230 N.J. 237 (2017).

[3]  L. 2011, c. 78.

A-0526-16T4

to unit members.[4]   Specifically, under N.J.S.A. 34:13A-16.7, increases could not exceed two percent per year compounded over the term of the contract.  By way of example, when compounded, an annual two percent increase yields an aggregate 10.4% increase for a five-year CNA.  However, payment of step increments to Troopers through pay period 20 of 2015 already consumed a large percentage of the funds available under the two percent cap.

The Division proposed halting step increments for Troopers, notwithstanding that step increments would continue for Sergeants[5] and "even though there is more room under the cap" because of the "pretty significant compression issue" within the State Police. Salary compression means there is little difference in the salaries paid between ranks.  It results, in part, because the salary of the highest ranking officer is limited to $141,000.

Finally, Ridolfino testified regarding general economic conditions, the State budget, and the State's unemployment rate, which was slightly higher than the national average.  He also

---

[4]  L. 2010, c. 105, codified at N.J.S.A. 34:13A-16.7, which was extended to 2017 by L. 2014, c. 11.

[5]  On January 31, 2016, the same arbitrator who heard the interest arbitration for the STFA issued an interest arbitration award for the State Troopers NCO Association of New Jersey, Inc. (NCOA), pursuant to which step increments were restored and paid.

stated the State's recovery from the economic slump was "sluggish" and trailing behind other states in the region.

Ridolfino further testified the State's liquidity ratio was low, its credit rating had been downgraded numerous times, and expenditures on employee pension and health benefits were an increasingly large portion of the State budget, as well as the budget for the Department of Law and Public Safety, of which the State Police were a part.

Ridolfino stated the State Police budget for fiscal year 2016 showed a 2.24% increase from the prior year. He conceded, however, the State budget was not subject to a two percent tax levy cap. He also conceded State Police salaries were a "negligible" component of the State budget, constituting less than one percent. Moreover, he indicated the State's general fund financed only sixty-five percent of the State Police budget with other sources funding the remaining thirty-five percent.

On January 31, 2016, the arbitrator issued an interest arbitration decision and award (Initial Award). As it relates to this appeal, the initial award provided for a five-year CNA, between July 1, 2012 and June 30, 2017. In terms of compensation, the arbitrator accepted the Division's data and provided for a 1.25% across-the-board increase for all ranks and steps, effective the first full pay period after July 1, 2016. The arbitrator also

allowed for step increments already paid and continued the freeze on further step increments that the Division had imposed as of pay period 20 in 2015. The arbitrator also froze the maintenance allowance at $13,819.64.

Regarding the freeze on step increments, the arbitrator acknowledged he departed "from the historical pattern where the NCOA unit and the STFA unit have traditionally received the same wage increases." He also acknowledged the effect of the increased pension and healthcare contributions under Chapter 78, which had caused declines in take-home pay, and found the award did "little to compensate members of the STFA unit for their reduction in earnings." However, he found, "[b]ecause of the statutory limitations under the 2% Hard Cap, members of the STFA are precluded from receiving a general wage increase."

The arbitrator also expressed concern the freeze on step increments could affect employee morale and stability of the workforce, particularly for more junior Troopers, stating: "While members at the top steps of the salary scale are well compensated, under the terms of the award, more junior Troopers will have to wait quite some time for a salary increase, and this may encourage some Troopers to seek employment elsewhere." He further stated:

> I am concerned that this award will have a deleterious impact upon the continuity and stability of the STFA bargaining unit. The

> record evidence shows that since 2010, there has been a decline in the total number of Troopers on the Division's payroll, and an increase in retirements. However, as noted throughout this document the 2% Hard Cap has left me no choice but to limit the amount of any salary increase.

The STFA appealed to PERC, claiming the Initial Award failed to properly consider and analyze the N.J.S.A. 34:13A-16(g) statutory factors. The Division cross-appealed, claiming the five-year term resulted in an award that exceeded the two percent cap on interest arbitration awards.

On April 14, 2016, PERC issued its decision. As it relates to this appeal, PERC found the arbitrator had not properly "costed out" the award to show compliance with the two percent statutory cap, because he did not include: the total base salary for the last year of the expired contract and how it was calculated; a calculation of the costs of the award, looking at the salary guide level or "scattergram"[6] placement of unit members on the last day before the end of new award; and a final calculation to ensure that the total economic award did not increase the employer's base salary costs in excess of the compounded value of a two percent increase per year over the length of the contract. Instead, the

---

[6] PERC defines "scattergram" as "a chart showing where employees are currently situated on the salary guide, thus providing a snapshot of the current total cost of the unit."

arbitrator simply relied upon the Division's calculations. However, the Division based its calculations upon a proposed six-year contract term, whereas the arbitrator awarded a five-year contract. Accordingly, PERC remanded the matter to the arbitrator to undertake the necessary calculations. PERC. No. 2016-69, 42 NJPER 505 (¶ 141 2016). PERC also ordered the arbitrator to supplement his analysis of the statutory factors set forth in N.J.S.A. 34:13A-16(g), particularly factor nine (statutory restrictions on the employer), N.J.S.A. 34:13A-16(g)(9). Ibid.

The arbitrator conducted a remand hearing on June 14, 2016, hearing testimony from Dee, Zanyor, and LaBruno. The parties submitted new proposals along with new calculations.

On July 11, 2016, the arbitrator issued his revised award (Remand Award). As it relates to this appeal, the arbitrator accepted the Division's proposal and provided for a five-year CNA extending between July 1, 2012 and June 30, 2017, because it was "consistent with the historic pattern in which all three units — the STFA, NCOA and the STSOA[7] – negotiated their contracts at the same time." The STFA had proposed a five-and-one-half-year contract.

_____

[7] The State Troopers Superior Officers Association.

11

With respect to maintenance compensation, the arbitrator also accepted the Division's proposal and provided for a 1.25% increase in maintenance payments, effective the first full pay period after July 1, 2016, in order to be consistent with the NCOA and STSOA units. Addressing statutory factor nine, the arbitrator found the Division used the correct data in making its calculations and the award complied with the two percent hard cap (increasing base salary by 10.24%), whereas the STFA's proposal did not. The arbitrator further stated: "This limited change in the maintenance calculation is all that is available as a wage increase because the CNA's provision for incremental increases subsumed any possible salary increase as of the 20th pay period in September 2015."

The arbitrator rejected the STFA's demand for a 1.25% increase to Troopers at step nine of range nineteen, for the last six months of the CNA. However, the arbitrator partially granted STFA's proposal to reinstate step increases, which the Division opposed.

More specifically, the arbitrator reinstated step increases beginning on June 29, 2017, the day before the new CNA expired. At that time, Troopers would be placed at the step and range they would have been eligible for, as if there had been no suspension of step increments after pay period 20 in 2015, and they would resume their normal progression on the step and range chart pending

12

negotiation of a successor CNA. However, the Troopers would not receive any back pay for the period during which step increases were suspended. Regarding this provision, the arbitrator stated:

> The STFA has argued that the effect of my Initial Award, were it to be implemented, would be to permanently freeze all step movement indefinitely. While the STFA notes that it could possibly negotiate the resumption of step movement going forward, at the present time there is no clear "career path for compensation." This would be an unjust result. In addition, especially as a result of the Appellate Division's decision in In re Cty. of Atl., 445 N.J. Super. 1 (App. Div. 2016), pet. for certif. pending, which restored the concept of the dynamic status quo to collective negotiations, the freeze in step movement may persist well after this five year CNA expires.[8] Accordingly, it would be unjust to permit such an indefinite freeze. In addition, because the suspension will end the day before the last day of the contract's expiration the cost to the Division if any will be de minimis. Any additional costs will not occur during the term of this CNA. The parties will be free to negotiate changes to the compensation package especially step movement at the conclusion of this agreement.
>
> [(citation to the record omitted).]

The Division appealed from the remand award, arguing the arbitrator's award of step movements on June 30, 2017, the last day of the successor contract, did not comply with the two percent cap, was not calculated to comply with the two percent cap, and

---

[8] The Court subsequently granted certification and affirmed the panel's decision on other grounds. Cty. of Atl., 230 N.J. 237.

attempted to avoid the statutory limitations of the compulsory interest arbitration law. The STFA responded the resumption of step movement did not violate the statute. The STFA also cross-appealed, arguing the arbitrator did not consider all of the N.J.S.A. 34:13A-16(g) statutory factors when analyzing the transportation allowance and education incentive proposals.

On September 22, 2016, PERC issued its final agency decision, affirming the remand award except as modified to exclude the step increments awarded on the last day of the CNA. Explaining this modification, PERC stated:

> Here, . . . the State is charged with a sizable double increment for a contract term that was not part of the interest arbitration, was not negotiated, and is not charged to either contract term.
>
> The last day of this contract will be critical for determining how the Troopers advance through the salary guide in their next contract. Essentially, due to the award's double increment bump on the last day, the next contract's raises would be applied using that higher salary guide level as a starting point but the significant cost of that double increment would not be accounted for. For those 84 Troopers highlighted in the State's brief who were at Range T-17, Step 4 in 2015, their double increment up to Step 6 on the last day of the contract would result in a salary increase of $5,792.04 as they jump from $66,438.00 to $72,334.02. That $5,792.04 represents a salary increase of 8.72%. However, only 1 day of that increase is charged to this contract because the double increment was awarded for the last day. Thus,

14

only $15.87 of the significant 8.75% increase was charged to this contract, while the remaining $5,776.17, or a rise of 8.69%, carries over into the next contract term that was not part of this interest arbitration and the opportunity to negotiate the salary for the next contract has been extinguished. Because those Troopers would already be at the higher salary guide level when negotiations and/or interest arbitration are being conducted for the next contract, that 8.69% of the double increment bump will not be accounted for as a new salary increase in the next contract. Thus, the bulk of the significant salary increment is not charged to either this contract or the next, effectively escaping the 2% Hard Cap. While the parties may mutually agree to salary increases in excess of the 2% Hard Cap if their negotiations are successful and interest arbitration is avoided for the next contract, the arbitrator's award of the double bump on the last day of this contract hamstrings the employer and union by baking in a carried over 8.69% raise, effectively taking those salary negotiations out of the parties' hands. Such an accounting maneuver in the interest arbitration process circumvents the legislative purpose of the 2% Hard Cap by permitting extreme, unaccountable raises in the transition between contracts. Accordingly, we find that the arbitrator's grant of double increments on the last day of the award handicaps the next round of negotiations, undermines the legislative intent to control costs, and disregards the financial impact of the step movement on the taxpayer. See N.J.S.A. 34:13A-16(g)(1) and — (6) and N.J.S.A. 34:13A-16. We therefore modify the arbitrator's remand award to remove the granting of increments on the last day of the CNA.

[(footnotes omitted).]

15

PERC rejected the STFA's argument that the award of increments on the last day of the CNA must be upheld pursuant to statutory provisions that mandate the payment of salary increments to State Troopers, stating: "The Legislature was well aware of these statutes when L. 2014, c. 11 was enacted. The Legislature could have chosen to exempt STFA members and other State Police personnel, but it did not."

PERC also rejected the STFA's argument that PERC precedent, specifically, In re Borough of Bogota, PERC No. 99-20, 24 N.J.P.E.R. 453 (¶ 29210 1998), prohibited modification of the award as to salary increases but, instead, required a remand for reconsideration. As to this issue, PERC stated: "Bogota involved the potential modification of a remand award regarding across the board salary increases. The instant matter only concerns the arbitrator's award of automatic increments on the last day of the CNA and our rationale for modifying the remand award is set forth above."

Finally, aside from the step increment issue, PERC found the arbitrator otherwise complied with its directions. He adequately showed the methodology he employed to calculate base salary and also costed out the award, which, aside from the step increments, amounted to an increase of 10.24% over five years, in compliance with the two percent statutory cap.

16                                    A-0526-16T4

The STFA appealed from the final agency decision. It raises the following points on appeal:

POINT I

THE COMMISSION IMPROPERLY EXCEEDED THE SCOPE OF ITS REVIEW WHEN IT DETERMINED IT WOULD ALTER THE ARBITRATOR'S DECISION.

POINT II

THE COMMISSION IS NOT FREE TO CONDUCT A DE NOVO REVIEW AND THEREAFTER FASHION ITS OWN AWARD.

POINT III

THE ARBITRATOR AND THE COMMISSION ARE STATUTORILY REQUIRED TO PROVIDE STEP MOVEMENT TO STATE TROOPERS PURSUANT TO TITLE 53.

POINT IV

THE COMMISSION DEPARTED FROM JUDICIAL AND AGENCY PRECEDENT WHICH FORBADE IT FROM MODIFYING AN AWARD BASED UPON FUTURE BUDGETARY RESTRICTIONS.

POINT V

THE STFA WAS DEPRIVED OF FUNDAMENTAL FAIRNESS AND DUE PROCESS WHEN IT WAS SURPRISED WITH A NEW REGULATORY RULE.

POINT VI

PERC'S NEW RULE IS PLAINLY UNREASONABLE, CONTRARY TO THE ACT AND UNDERMINES THE LEGISLATURE'S INTENT.

    A. APPLICATION OF THE CAP IS OUTSIDE OF PERC'S MANDATE

17

B.    PERC'S DECISION WAS ARBITRARY AND CAPRICIOUS

1.    VAGUENESS

2.    VOID IN APPLICATION IN THE ABSENCE OF GUIDING STANDARDS

C.    THE NEW "RULE" IS BASED UPON AN ERRONEOUS CALUCATION

D.    VIOLATION OF THE LEGISLATIVE INTENT

The New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -43, includes a compulsory interest arbitration procedure for police departments and police officer representatives who reach an impasse in collective negotiations. N.J.S.A. 34:13A-16(b)(2). Either party may petition to initiate this process with PERC. <u>Ibid.</u> The parties may appeal the arbitrator's award to PERC and may, in turn, appeal PERC's final decisions to this court. N.J.S.A. 34:13A-16(f)(5)(a).

Our review of "PERC decisions reviewing arbitration is sensitive, circumspect and circumscribed." <u>Twp. of Teaneck v. Teaneck Firemen's Mut. Benevolent Ass'n Local No. 42</u>, 353 N.J. Super. 289, 300 (App. Div. 2002) (citing <u>In re Hunterdon</u>, 116 N.J. 322, 328 (1989)), <u>aff'd o.b.</u>, 177 N.J. 560 (2003). We will uphold these decisions unless they are "clearly arbitrary or capricious." <u>Ibid.</u> (citation omitted). However, we provide heightened scrutiny of statutorily mandated public interest arbitration where public

funds are at stake. <u>Hillsdale PBA Local 207 v. Borough of Hillsdale</u>, 137 N.J. 71, 82 (1994).

PERC's role is to consider whether the arbitrator properly applied the factors articulated in N.J.S.A. 34:13A-16(g) and issued a reasonable determination. <u>Teaneck</u>, 353 N.J. Super. at 306. PERC is statutorily authorized to "affirm, modify, correct or vacate" an interest arbitration award or it "may, at its discretion, remand the award to the same arbitrator or to another arbitrator . . . for reconsideration." N.J.S.A. 34:13A-16(f)(5)(a).

The arbitrator's role, in turn, is to choose between the parties' final offers after considering these factors. <u>Hillsdale</u>, 137 N.J. at 82. PERC will not vacate an award unless: (1) the arbitrator failed to give due weight to the N.J.S.A. 34:13A-16(g) factors he or she determined were relevant, "(2) the arbitrator violated the standards in N.J.S.A. 2A:24-8 and -9[,] or (3) the award is not supported by substantial credible evidence in the record as a whole." <u>In re State</u>, 443 N.J. Super. 380, 385, (App. Div.) (citing <u>Hillsdale</u>, 137 N.J. at 82), <u>certif. denied</u>, 225 N.J. 221 (2016). We will similarly uphold an award if it is supported by "substantial credible evidence in the record." <u>Hillsdale</u>, 137 N.J. at 82 (citation omitted).

Primarily, the STFA argues PERC erred in modifying the arbitrator's remand decision to eliminate the ordered step increments. We remand this matter to PERC for reconsideration of its final decision in light of the Supreme Court's subsequent decision in Cty. of Atl.

In Cty. of Atl., we reversed PERC's final agency decisions "because PERC's abandonment of the dynamic status quo doctrine was action outside the scope of its legislative mandate, which is the implementation of the [Act]." 445 N.J. Super. 1, 6 (App. Div. 2016). We concluded "PERC wrongly assumed that government employers cannot negotiate to avoid paying increments after the lapse of CNAs" and also determined the employer "has the option, when engaged in new negotiations, to recoup salary increments in a new contract." Id. at 18.

In Cty. of Atl., the Court concluded it "need not determine whether, as a general rule, an employer must maintain the status quo while negotiating a successor agreement." 230 N.J. at 243. Instead, the Court held "the governing contract language requires that the terms and conditions of the respective agreements, including the salary step increases, remain in place until a new CNA is reached." Ibid.

The Court found "salary step increments is a mandatorily negotiable term and condition of employment because it is part and

parcel to an employee's compensation for any particular year." Id. at 253. Accordingly, the Court faced the issue "whether the salary increment systems provided for in the expired CNAs still governed working conditions during the hiatus period between agreements." Id. at 253-54 (citing N.J.S.A. 34:13A-5.3, -5.4(a)(1), and -5.4(a)(5)).

In Cty. of Atl., the Atlantic County-PBA Local 77 CNA stated "[a]ll provisions of this Agreement will continue in effect until a successor Agreement is negotiated." Id. at 244. Similarly, the Atlantic County-PBA Local 34 CNA provided "[a]ll terms and conditions of employment, including any past or present benefits, practices or privileges which are enjoyed by the employees covered by this Agreement that have not been included in this Agreement shall not be reduced or eliminated and shall be continued in full force and effect." Id. at 244-45. The Bridgewater-PBA Local 174 CNA stated "[t]his agreement shall remain in full force and effect during collective negotiations between the parties beyond the date of expiration set forth herein until the parties have mutually agreed on a new agreement." Id. at 248-49.

The Court found the three expired CNAs "contain clear and explicit language that the respective salary guides — and all other terms and conditions set forth in those agreements — will continue until a successor agreement is reached." Id. at 255.

A-0526-16T4

Accordingly, the Court found the salary increment systems in question "remained in effect after the agreements' expiration dates under basic principles of contract law." Ibid. The Court noted the public entities "could have simply negotiated different contract terms." Id. at 256. The Court held:

> [T]he unilateral modification at issue here directly contradicted the parties' binding written agreement. Because the salary increment system was a term and condition of employment that governed beyond the CNAs' expiration date, [the public entity employers] committed an unfair labor practice when they altered that condition without first attempting to negotiate in good faith, in violation of N.J.S.A. 34:13A-5.3, -5.4(a)(1), and -5.4(a)(5).
>
> [Id. at 256.]

Here, the parties' 2008-2012 CNA explicitly stated "the terms of this Agreement shall remain in force until the effective date of a successor Agreement," similar to the three CNAs at issue in Cty. of Atl. See id. at 244-45, 248-49. However, based upon PERC's Cty. of Atl. decision (which the Appellate Division and Supreme Court reversed), the Division unilaterally ceased paying step increments as of pay period 20 in 2015, pending negotiation of a successor agreement. At the arbitration hearings, counsel stated the cessation of step increments was the subject of litigation both in the Superior Court and before PERC.

The Division maintains Cty. of Atl. is distinguishable because it was premised upon PERC's consideration of the two percent property tax levy cap imposed by the Local Budget Law, N.J.S.A. 40A:4-45.44 to -45.47, whereas this matter involves the two percent cap imposed on interest arbitration awards under the Act, N.J.S.A. 34:13A-16.7(b). We are unpersuaded by this argument.

Ultimately, the Court's holding in Cty. of Atl. was premised upon the terms of the CNAs. 230 N.J. at 254-57. The Court held "the governing contract language requires that the terms and conditions of the respective agreements, including the salary step increases, remain in place until a new CNA is reached." Cty. of Atl., 230 N.J. at 243. Just as in Cty. of Atl., "we need not look beyond the [contract itself] to conclude that the step increases continued beyond the expiration of the contracts." Id. at 254. Here, like the contracts reviewed in Cty. of Atl., the 2008-2012 CNA between the Division and the SFTA stated the terms of the CNA, including step increments, "shall remain in force until the effective date of a successor Agreement." Accordingly, "the salary increment system[] remained in effect after the agreement['s] expiration date[] under basic principles of contract law." Id. at 255. Notwithstanding that contract language, effective in pay period 20 in 2015, the Division unilaterally stopped paying salary

23

increments. Around the same time, the Division petitioned for compulsory interest arbitration.

The State's failure to comply with the terms of the CNA was not addressed by the arbitrator or by PERC.[9] Thus, in light of the Supreme Court's decision in Cty. of Atl., we vacate the September 22, 2016 final agency decision and remand for PERC to reconsider the terms of the CNA and the Division's non-compliance with those terms in the context of the parties' arbitration and the statutory cap on interest arbitration awards. In light of our ruling, we do not reach the other issues raised by the SFTA.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] We recognize PERC rendered its final decision before the Supreme Court issued its opinion in Cty. of Atl.

24
A-0526-16T4