**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3008-19

DARIUS H. GITTENS,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted May 19, 2021 – Decided June 10, 2021

Before Judges Fuentes and Rose.

On appeal from the New Jersey Department of Corrections.

Wronko Loewen Benucci, attorneys for appellant (Michael Poreda, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Darius H. Gittens, an inmate at Bayside State Prison (BSP) appeals from a February 19, 2020 final agency decision of the New Jersey Department of Corrections (DOC), which upheld an adjudication and sanctions for committing prohibited act *.102, attempting or planning an escape, in violation of N.J.A.C. 10A:4-4.1(a)(1)(xiii).  We affirm.

On December 17, 2019, F-Housing Unit (F-Unit) Officer Raimon Ng conducted a routine search of Gittens's cell and seized documents from his locked footlocker.  The documents detailed personal information regarding DOC employees, including their full names, salaries, work schedules, overtime, and potential family members.  Ng notified Sergeant Ryan Pepper, who thereafter searched Gittens's cell.  Pepper confiscated detailed maps of the secured areas in the prison, the trailer area, the F-Unit, the cells located within the unit, DOC internal management procedures, and "dimensions of fences" surrounding the prison.  Pepper also seized documents containing "information related to when doors were opened, how long they were opened, when stand[-]up counts were called, where metal detectors were located, where frisk shacks were located, and numerous distances and measurements of areas within the jail."

A-3008-19

On December 19, 2019, Gittens was served with the charge at issue[1] and pled not guilty.  Gittens also requested and was granted counsel substitute.  The hearing scheduled that same day was postponed to consider Gittens's request for a polygraph examination.  Gittens sought a polygraph examination to demonstrate he lacked the intent to escape and that the evidence confiscated from his cell was "taken out of context."  A DOC administrator denied the request finding "there is no extenuating 'issue of credibility' which would substantiate a polygraph examination.  This is supported by a previous rule violation and subsequent sanction."  The administrator concluded "[t]here [wa]s sufficient evidence presented, including [c]ustody reports and testimony" for the hearing officer to make a credibility determination.

On December 31, 2019, Gittens submitted a second polygraph request.  Gittens explained that the "previous rule violation" cited by the administrator was a prison "escape[] for a few hours" as "a tag along, with [two] other inmates"

---

[1] In his December 17, 2019 incident report, Pepper indicated that in addition to the charge for prohibited act *.102, attempting or planning an escape, Gittens "receiv[ed] a *.360 [charge] for unlawfully obtaining or seeking to obtain personal information pertaining to . . . DOC staff or other law enforcement staff or the family of said staff" and "a *.210 [charge for] possession of anything not authorized for retention or receipt by an inmate or not issued to him or her through regular correctional facility channels."  It does not appear from the record on appeal that Gittens was charged with prohibited act *.360 or *.210.

A-3008-19

that occurred thirty-three years ago. Gittens also contended there was new evidence available, including a security recording that showed Pepper and Ng reading Gittens's "diary" logbook. Claiming Pepper tore out pages out of the logbook to present at the hearing and the remainder of the logbook was "gone," Gittens contended a polygraph examination was necessary to reveal his "subjective intention."

Again, the DOC administrator denied the request, concluding the hearing officer possessed sufficient evidence to determine credibility. Quoting N.J.A.C. 10A:3-7.1(b), the administrator noted a "polygraph shall not be used in place of a thorough investigation, but shall be used to assist an investigation when appropriate." According to the administrator, Gittens "possessed various documents handwritten by [him]self, along with numerous printed documents containing sensitive information which are not suitable for retention and pose a safety and security risk to the orderly operation of the correctional facility."

Gittens's request for confrontation with Pepper and Ng was granted. Although Gittens was given the opportunity to present witnesses on his behalf at the hearing, he declined to do so.

On January 3, 2020, the hearing officer issued a written decision, concluding "[a] reasonable person would believe the totality of drawings,

4

sketches and information would be information to aid in an escape. Evidence supports the charge." In reaching her decision, the hearing officer noted Gittens's "history of escape," which Gittens himself acknowledged, and his "experience in tampering with locking devices." The hearing officer found that Gittens "shows no remorse for his self-fulfilling actions and refuses[d] to cease his actions despite being advised that in the harsh reality of prison culture his actions must be viewed as dangerous and against policies."

The hearing officer elaborated:

> Gittens admits to possession of said drawings, maps and security details. His defense that information was obtain[ed] for alternate reasoning is not supported and is irrelevant. [Gittens]'s intent is irrelevant if he possessed items that would aid in and [are] consistent with planning an escape. Inmates are responsible for what they possess. A reasonable person would know that you are not allowed to log and dictate every detail of the security of the prison. . . . Gittens['s] role is of an inmate, his role is not to police the police, nor investigate the [DOC], . . . Gittens must comply with the written rules of his position as an inmate.

The hearing officer imposed the following sanctions: 180-day administrative segregation as a Category A offense pursuant to N.J.A.C. 10A:4-5.1(e); ninety-day loss of commutation time; ten-day loss of recreation privileges; and confiscation of all documents pertaining to the offense.

Gittens's administrative appeal was denied. The DOC, acting through the assistant superintendent, upheld the hearing officer's decision, finding

> there was compliance with the New Jersey Administrative Code on inmate discipline, which prescribes procedural safeguards, and the charges were adjudicated accordingly. The preponderance of evidence presented supports the decision of the hearing officer and the sanction(s) [sic] rendered is appropriate. Based on the information as presented there is no apparent misinterpretation of the facts. No leniency will be afforded to [Gittens]. Uphold all sanctions.

This appeal followed.

On appeal, Gittens contends the "hearing officer's opinion was arbitrary and capricious and not supported by substantial evidence." Gittens maintains he never intended to utilize the documents to plan his escape. Instead, Gittens claims "[h]e began meticulously chronicling the conditions at the prison in diaries both for the purposes of writing a book about the psychological impact caused by prison design and also for the purposes of filing complaints and litigation." At sixty years old and in poor health, Gittens claims he is physically unable to escape.

More particularly, he raises the following points for our consideration:

> I.      Gittens was not on fair notice that he could be punished simply for sketching maps of the prison.
> (Not raised below).

6

II.	A finding that an inmate planned an escape without considering the inmate's intent is arbitrary and capricious.

III.	Suppression of all evidence in Gittens's favor rendered the procedur[e] fundamentally unfair and the decision arbitrary and capricious.

IV.	The [h]earing [o]fficer's reliance on Gittens's history of escape was improper under the regulations. (Not raised below).

V.	Gittens's confrontation with prison officers regarding stolen mail, and the [h]earing [o]fficer's obvious bias against Gittens, demonstrate that the [h]earing [o]fficer's decision and the underlying charge were retaliatory.
(Not raised below).

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011); Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support

a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

As we have long recognized, "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

However, our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision[.]" Figueroa, 414 N.J. Super. at 191 (citation omitted). "[R]ather, our function is 'to engage in a careful and principled consideration of the agency record and findings.'" Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)). It is well settled that an agency's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special

deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Pursuant to N.J.A.C. 10A:4-4.1(a):

> An inmate who commits one or more of the following numbered prohibited acts shall be subject to disciplinary action and a sanction that is imposed by a Disciplinary Hearing Officer . . . . Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . . Prohibited acts are further subclassified into five categories of severity (Category A through E) with Category A being the most severe and Category E the least severe.

A Category A offense, including prohibited act *.102, attempting or planning an escape, "shall result in a sanction of no less than 181 days and no more than 365 days of administrative segregation per incident." A hearing officer's finding that an inmate committed a prohibited act must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a).

Applying these standards to the present matter, we discern no basis to disturb the DOC's decision. Gittens was afforded due process and there was substantial credible evidence in the record to support the finding of guilt. The sanctions were commensurate with the severity of the infraction and authorized under N.J.A.C. 10A:4-5.1(e) for an asterisk offense, which "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

          A-3008-19

Moreover, we have considered and reject Gittens's assertion that he was denied due process. Although inmates are not entitled to the same due process protections as criminal defendants, they are guaranteed certain limited protections. See McDonald v. Pinchak, 139 N.J. 188, 194 (1995); Avant v. Clifford, 67 N.J. 496, 523 (1975).

Here, Gittens was given written notice of the charge at least twenty-four hours before the hearing was originally scheduled[2]; provided with counsel substitute; offered an opportunity to call and confront witnesses; and received a written statement of the evidence relied upon and the reasons for the discipline. Notwithstanding Gittens's assertion that he was denied the opportunity to call Investigator Donna Alexander, his counsel substitute attested to the veracity of the adjudication report, which stated Gittens declined the opportunity to present the testimony of witnesses at the hearing. We therefore find nothing in the record to suggest the hearing officer's determination was arbitrary, capricious, or unreasonable.

Nor are we persuaded by Gittens's argument that he was improperly denied the opportunity to take a polygraph examination. We have long

[2] The hearing was held on January 3, 2020, following multiple postponements to address Gittens's requests for confrontation of officers and a polygraph examination, and to permit the hearing officer to review the record.

A-3008-19

recognized an inmate does not have the right to a polygraph test to contest a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). Indeed, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

In the present matter, the administrator determined all issues raised by Gittens could be decided by the hearing officer. Notably, the administrator did not reference any issues of credibility raised in either of Gittens's requests. That is because Gittens never denied possessing the documents. Instead, he sought a polygraph examination to demonstrate he lacked the requisite intent to plan an

escape and intended to use the documents for legitimate purposes. But the hearing officer expressly rejected Gittens's explanation, finding his "alternate reasoning [wa]s not supported and [wa]s irrelevant" here, where he possessed documents that "log[ged] and dictate[d] every detail of the security of the prison."

Finally, we note Gittens failed to raise the arguments asserted in points I, IV and V before the hearing officer. "Normally, we do not consider issues not raised below at an administrative hearing." In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008) (citing Bryan v. Dep't of Corr., 258 N.J. Super. 546, 548 (App. Div. 1992)); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Although Gittens has not advanced any such interests in support of the arguments framed in these points, we have considered his belated contentions and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3008-19