610 A.2d 889

PATRICK BRYAN, APPELLANT, v. DEPARTMENT
OF CORRECTIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted June 10, 1992—Decided July 29, 1992.

Before Judges BRODY, MUIR, Jr. and LANDAU.

*Patrick Bryan,* appellant, filed a *pro se* brief.

*Robert J. Del Tufo,* Attorney General, attorney for respondent (*Daniel A. DiLella,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

BRODY, J.A.D.

■ Appellant is a state prisoner who was disciplined for violating rules and regulations applicable to state prison facili-

ties while serving a 10–year prison term in the Salem County jail. After he committed the disciplinary infraction with which he was charged, appellant was transferred to an adult state prison facility where the disciplinary proceedings were conducted pursuant to rules and regulations applicable to state prison facilities. He argues that because he was an inmate of a county jail at the time of the alleged infraction, he is subject to the rules and regulations applicable to that institution, and not the rules and regulations applicable to state penal institutions. He also contends that even if he were subject to the rules and regulations applicable to state prison facilities, he was denied due process because he did not receive notice of those rules and regulations before he committed the alleged infraction.

We ordinarily would not consider these issues because appellant did not raise them at the disciplinary hearing. *Nieder v. Royal Indemnity Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). We depart from our usual rule because appellant raises important issues whose determination will have a significant effect on the time he will serve in prison. *See State v. Latimore*, 197 *N.J.Super.* 197, 214, 484 *A.*2d 702 (App.Div. 1984), *certif. den.* 101 *N.J.* 328, 501 *A.*2d 978 (1985).

Because the term of appellant's custodial sentence was more than one year, the sentencing court had committed him "to the custody of the Commissioner of the Department of Corrections for the term of his sentence and until released in accordance with law." *N.J.S.A.* 2C:43–10a. Appellant was not placed in a state prison facility upon sentencing, however, because state prison facilities were overcrowded. Though a state prisoner, he was placed in a county jail pursuant to an emergency executive order by which the State reimburses counties for state prisoners kept in their jails. *See County of Gloucester v. State of New Jersey et al.*, 256 *N.J.Super.* 143, 606 *A.*2d 843 (App.Div. 1992) (declaring the "emergency" at an end, but staying its judgment for one year).

Appellant's status essentially was that of a state prisoner transferred to a county jail pursuant to the terms of a contract of reimbursement between the State and the governing body of the county. Prisoners so transferred "shall be subject to rules, regulations and discipline of the institution in which they are confined, *except in so far as they conflict with the rules and regulations of the State board."* (Emphasis added.) *N.J.S.A.* 30:4–85 (*L.* 1948, *c.* 203, § 1[1]). The "State board" referred to by this 1948 statute was the State Board of Control of Institutions and Agencies created by *L.* 1919, *c.* 97, § 2.

The Legislature had granted that Board "complete and exclusive jurisdiction, supreme and final authority, and the requisite power to accomplish its aims and purposes in and upon ... correctional institutions of the State...." *L.* 1919, *c.* 97, § 4. Those powers, originally given to its predecessor board, the State Board of Charities and Corrections, included the ultimate authority to promulgate rules and regulations for the "custody, care and treatment of the inmates" of state prison facilities. *L.* 1918, *c.* 147, sec. 304.[2]

Thus since 1948 the Legislature has recognized that there may be instances where an inmate serving a state prison sentence in a county jail will be subject to rules and regulations expressly applicable only to the jail which conflict with rules and regulations expressly applicable only to state prison facilities. In those instances, *N.J.S.A.* 30:4–85 mandates that the rules and regulations expressly applicable only to state prison facilities prevail. We therefore reject appellant's argument that the disciplinary proceedings against him were defective

---

[1] An amendment, *L.* 1957, *c.* 93, § 1, did not change this provision.

[2] In 1971, the Legislature "continued" the State Board of Control of Institutions and Agencies as the State Board of Institutional Trustees. *N.J.S.A.* 30:1–2.2. In 1976, the Legislature transferred the powers of the State Board of Institutional Trustees to the Commissioner of Corrections. *N.J.S.A.* 30:1B–21.

because they were based on rules and regulations expressly applicable only to state·prison facilities.

■ Appellant's second argument is more troublesome. He contends that if his status as a state prisoner in a county jail subjects him to the disciplinary rules and regulations applicable to state prison facilities, he was denied the process due prison inmates because, though given notice on admission to the Salem County jail of its rules and regulations, he "was never issued notice of the rules and regulations governing a *state* correction facility...." Thus, he (1) never received notice that his conduct was a disciplinary infraction under state prison rules and regulations and (2) never received notice of the severe sanctions to which he would be subject for committing the infraction.

Appellant was charged with a violation of *N.J.A.C.* 10A:4–4.1/*253, a regulation expressly applicable only to state prison facilities, which prohibits "engaging in, or encouraging, a group demonstration." His only defense at the hearing was that he was not guilty of the infraction charged. The evidence, not contested on appeal, was that appellant served as the spokesman for a group of prisoners in the Salem County jail who had set up a barricade that prevented anyone from entering their wing of the jail. Appellant acknowledges having been given prior notice of the Salem County jail regulations. That notice adequately warned him that his conduct was an infraction. Those regulations include among "Class 1 [serious] Infractions":

11) *Riot*—The coming together of two or more persons who engage in violent and disruptive conduct, thereby causing or creating a serious imminent risk of causing injury to persons or property.

    *    *  .  *    *    *    *    *    *

13) *Interfering with a Staff Member*—When one interferes with, or obstructs any staff member who is engaged in the performance of his/her duties.

14) *Misuse and/or Destruction of County Property*—When one purposely damages, tampers with, alters, defaces, or mutilates any article of County property.

    *    *    *    *    *    *    *    *

24) *Unauthorized Assembly*—Inmates may not congregate in, or hold any group meeting without proper approval of the Warden or his designee; nor may inmates form organizations without the proper approval.

     *     *     *     *     *     *     *     *

27) *Creating a Disturbance*—When one creates or causes a hazardous or offensive condition by an act which is not authorized and/or interferes with others while in an area where a large number of inmates are assembled.

Appellant does not state what aspect of the infraction with which he was charged and found guilty is not covered by the notice he admittedly had of the county jail infractions. Regardless of the abstract merits of his argument, there is no basis to conclude that he was prejudiced even if he did not have notice of the state prison facilities regulations.

The Assistant Superintendent of the New Jersey State Prison upheld the following sanctions imposed by the hearing officer: 15 days detention, 180 days loss of commutation credits, and 365 days of administrative segregation. The Salem County jail sanctions for violations of Class 1 infractions limit the aggregate term of "Disciplinary Detention" to only 15 days and loss of "Good Time" to only 30 days. The more modest sanctions available for county jail disciplinary infractions reflect the more modest maximum term of imprisonment, one year, to which an inmate may be sentenced to a county jail.

The process due an inmate charged with a serious infraction includes notice of the charges and "general notice of prison rules, offenses, sanctions and the like, to which we have already referred...." [3] *Avant v. Clifford*, 67 *N.J.* 496, 525, 341 *A.2d*

---

[3] The reference is to *N.J.S.A.* 30:4–8.4 and –8.5 quoted in full in *Avant* at 512–513, 341 *A.2d* 629. Those statutes provide:

    [30:4–8.4] Subject to guidelines set down by the Director of the Division of Correction and Parole [whose powers were transferred in 1976 to the Commissioner of the Department of Corrections by *N.J.S.A.* 30:1B–9], every State penal and correctional institution shall formally promulgate and publish rules and regulations governing the rights, privileges, duties and obligations of the inmate population confined therein. Among other things, such publications shall set forth the authorized sanctions for various classes of violations of the aforesaid rules and regulations, and

629 (1975). *Avant,* therefore, requires that in order to be disciplined, an inmate must be given notice before committing an infraction of not only the conduct that is prohibited but also the sanction that may be imposed. Because appellant did not raise the matter at the hearing, he submitted no evidence respecting the notice, if any, he received.

We remand the matter for a further hearing to enable the parties to present evidence and to enable the hearing officer to make findings as to whether, before committing the infraction, appellant received notice that the infraction he committed carried the sanctions imposed. If he did not, the sanctions may not exceed those provided for in the county jail regulations, which appellant acknowledges he had received before committing the infraction.

Remanded for further proceedings.

---

detail the procedures for imposing summary and administrative punishment as well as for appealing therefrom. No punishment may be meted out other than of the type and in the manner prescribed by such rules and regulations.

[30:4–8.5] Upon the arrival of a prisoner in any correctional institution in the State, he shall be furnished with a copy of the institution's rules and regulations and shall have the meaning of the same explained to him. Spanish language copies of the institutional rules and regulations shall be provided to Spanish-speaking prisoners not conversant with the English language. To the extent possible, foreign language speaking prisoners not sufficiently conversant with the English language shall also be provided with verbal explanations in their language of greatest facility of all institutional rules and regulations.