NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-3111-13T2

IN THE MATTER OF
STATE OF NEW JERSEY and
NEW JERSEY LAW ENFORCEMENT
SUPERVISORS ASSOCIATION.

_____

APPROVED FOR PUBLICATION

January 15, 2016

APPELLATE DIVISION

Argued September 21, 2015 — Decided January 15, 2016

Before   Judges   Messano,   Simonelli   and
Carroll.

On   appeal   from   the   New   Jersey   Public
Employment  Relations  Commission,  PERC  Docket
No. IA-2014-003.

Frank   M.   Crivelli   argued   the   cause   for
appellant   New   Jersey   Law   Enforcement
Supervisors  Association  (Crivelli  &  Barbati,
LLC,  attorneys;  Mr.  Crivelli  and  Donald  C.
Barbati, on the brief).

Jeffrey  J.  Corradino  argued  the  cause  for
respondent  State  of  New  Jersey  (Jackson
Lewis  P.C.,  attorneys;  Mr.  Corradino,  of
counsel   and   on   the   brief;   James   J.
Gillespie, on the brief).

Don   Horowitz,   Acting   General   Counsel,
attorney  for  respondent  New  Jersey  Public
Employment  Relations  Commission  (Mary  E.
Hennessy-Shotter,  Deputy  General  Counsel,  on
the statement in lieu of brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

Appellant New Jersey Law Enforcement Supervisors Association (NJLESA) appeals from that part of the March 10, 2014 final decision of respondent Public Employment Relations Commission (PERC), which affirmed a compulsory interest arbitration salary award rendered pursuant to the Police and Fire Public Interest Arbitration Reform Act (Act), N.J.S.A. 34:13A-14 to -21. On appeal, NJLESA contends that PERC erred in affirming the arbitrator's acceptance of the scattergram and methodology offered by respondent State of New Jersey (State) to calculate the salary award within the confines of N.J.S.A. 34:13A-16.7(b), commonly known as "the 2% salary cap."[1] For the following reasons, we affirm.

We begin with a review of the pertinent authority. At the time of the arbitration in this matter, the Act prohibited an interest arbitrator from rendering a salary award

> which, on an annual basis, increases base
> salary items by more than 2.0 percent of the
> aggregate amount expended by the public
> employer on base salary items for the
> members of the affected employee
> organization in the twelve months

---

[1]  We decline to address NJLESA's additional contention, raised for the first time on appeal, that PERC's and the arbitrator's failure to consider its unique status as an intermediary, transitional bargaining unit led to an improper determination of the amount of monies available for distribution in a salary award rendered under the 2% salary cap. See Bryan v. Dep't of Corr., 258 N.J. Super. 546, 548 (App. Div. 1992) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

> immediately preceding the expiration of the collective negotiation agreement subject to arbitration; provided, however, the parties may agree, or the arbitrator may decide, to distribute the aggregate monetary value of the award over the term of the collective negotiation agreement in unequal annual percentages.
>
> [N.J.S.A. 34:13A-16.7(b).[2]]

In rendering an award, the arbitrator must provide a reasoned explanation for the award, state which factors in N.J.S.A. 34:13A-16(g) were relevant, satisfactorily explain why the other factors were not relevant, and provide an analysis of the evidence on each relevant factor. Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. 71, 83-84 (1994). An arbitrator need not rely on all factors in fashioning the award, but must consider the evidence on each. Ibid.

In cases where the 2% salary cap applies, "the arbitrator must state what the total base salary was for the last year of the expired contract and show the methodology as to how base salary was calculated." Borough of New Milford and PBA Local 83, P.E.R.C. No. 2012-53, 38 N.J.P.E.R. ¶340, 2012 N.J. PERC LEXIS 18 at 13 (2012). Where the parties dispute the actual base salary amount, "the arbitrator must make the determination

---

[2] N.J.S.A. 34:13A-16.7(b) was amended, effective June 24, 2014, retroactive to April 2, 2014. P.L. 2014, c. 11, § 2. The amendment does not apply in this case.

and explain what was included based on the evidence submitted by the parties." Ibid. The arbitrator must then "calculate the costs of the award to establish that the award will not increase the employer's base salary costs in excess of 6% in the aggregate." Ibid. In calculating the award, the arbitrator must

> review the scattergram of the employees' placement on the guide to determine the incremental costs in addition to the across-the-board raises awarded. The arbitrator must then determine the costs of any other economic benefit to the employees that was included in base salary, but at a minimum this calculation must include a determination of the employer's cost of longevity.
>
> [Ibid.]

"Once these calculations are made, the arbitrator must make a final calculation that the total economic award does not increase the employer's costs for base salary by more than 2% per contract year[.]" Id. at 13-14.

In reviewing an interest arbitration award, PERC must determine whether: (1) the arbitrator failed to give due weight to the N.J.S.A. 34:13A-16(g) factors he deemed relevant to the resolution of the specific dispute; (2) the arbitrator violated the standards in N.J.S.A. 2A:24-8 and -9; or (3) the award is not supported by substantial credible evidence in the record as

a whole. Hillsdale, supra, 137 N.J. at 82. In cases where the 2% salary cap applies, PERC must also determine whether the award does not increase the employer's costs for base salary by more than 2% per contract year or, in this case, 8% in the aggregate. New Milford, supra, P.E.R.C. No. 2012-53, 38 N.J.P.E.R. ¶340, 2012 N.J. PERC LEXIS 18 at 13-14.

"Judicial scrutiny in public interest arbitration is more stringent than in general arbitration . . . [because it] is statutorily-mandated and public funds are at stake." Hillsdale, supra, 137 N.J. at 82. Accordingly, the "scope of our review of PERC's decisions reviewing arbitration is 'sensitive, circumspect, and circumscribed.'" In re City of Camden and the Int'l Ass'n of Firefighters, Local 788, 429 N.J. Super. 309, 327 (App. Div.) (quoting Twp. of Teaneck v. Teaneck Firemen's Mut. Benevolent Ass'n Local No. 42, 353 N.J. Super. 289, 300 (App. Div. 2002)), certif. denied, 215 N.J. 485 (2013). We defer to PERC's decisions because of its expertise and will only reverse if the decision is clearly demonstrated to be arbitrary, capricious, or unreasonable. In re Hunterdon Cty. Bd. of Chosen Freeholders, 116 N.J. 322, 328 (1989).

The record in this case reveals that NJLESA represents 665 primary-level law enforcement supervisors in several negotiation units. NJLESA and the State were parties to a collective

negotiations agreement (CNA) that expired on June 30, 2011. Following unsuccessful negotiations and mediation, on September 16, 2013, NJLESA filed a petition with PERC seeking compulsory interest arbitration pursuant to the Act.

Regarding the salary award, the arbitrator first determined that $56,945,856.70 was total base-year salary in the final twelve months of the CNA. The arbitrator then multiplied two percent of the total base-year salary ($1,138,917) by four and determined that $4,555,668 was the amount of money available under the 2% salary cap for the four-year successor CNA. The arbitrator next determined the amount the State would expend during the successor CNA based on each NJLESA member being moved through the salary schedule over the four years by achieving annual step movement, or annual increments, pursuant to the salary schedule regardless of whether they continued to be employed beyond the date the monies were projected to be spent. Using the State's scattergram, the arbitrator determined the cost of the step movement alone to be $3,734,295 or 6.56% of the original base salary amount. The arbitrator concluded that $821,373 remained to be awarded under the 2% salary cap, and ultimately granted a total salary award of $757,833, which was within the 2% salary cap. The arbitrator found that although

$821,373 was available to be awarded, there was "no basis for the expenditure or that requires any additional amounts."

NJLESA did not claim that the arbitrator failed to comply with N.J.S.A. 34:13A-16(g) or violated the standards in N.J.S.A. 2A:24-8 and -9, and agreed that $56,945,856.70 was the total base-year salary in the final twelve months of the CNA. Instead, NJLESA challenged the arbitrator's acceptance of the State's scattergram and methodology to calculate the costs of the salary award to establish that the award would not violate the 2% salary cap. NJLESA asserted that its scattergram provided a more accurate "cost out" of the salary award because it contained the actual salary expenditures for fiscal years 2012 and 2013, the first two years of the successor CNA, which reflected savings the State realized in those fiscal years from retirements and attrition. In contrast, the State's scattergram contained projected salary figures for fiscal years 2012 and 2013, and moved all NJLESA members through the salary guide regardless of whether they retired after fiscal year 2011 or new members joined the unit.

PERC determined that the arbitrator's acceptance of the State's scattergram was consistent with New Milford, and rejected NJLESA's argument that the savings the State realized in fiscal years 2012 and 2013 should be credited. Citing

Borough of Ramsey and Ramsey PBA Local No. 155, P.E.R.C. No. 2012-60, 39 N.J.P.E.R. ¶17 (2012), PERC held that "[w]hether speculative or known, . . . any changes in financial circumstances benefitting the employer or majority representative [were] not contemplated by the statute or to be considered by the arbitrator."  This appeal followed.

On appeal, NJLESA argues that the arbitrator's decision to accept the State's scattergram and methodology, and PERC's affirmance of that decision, contravened PERC's prior decisions in New Milford, supra, and City of Atlantic City and Atlantic City PBA Local 24, P.E.R.C. No. 2013-82, 39 N.J.P.E.R. ¶161, 2013 N.J. PERC LEXIS 38 (2013), which compelled the arbitrator to adopt NJLESA's scattergram and methodology.  In particular, NJLESA emphasizes a passage in New Milford, where PERC said:

> Since an arbitrator, under the new law, is required to project costs for the entirety of the duration of the award, calculation of purported savings resulting from anticipated retirements, and for that matter added costs due to replacement by hiring new staff or promoting existing staff are all too speculative to be calculated at the time of the award.  The Commission believes that the better model to achieve compliance with P.L. 2010 c. 105 is to utilize the scattergram demonstrating the placement on the guide of all of the employees in the bargaining unit as of the end of the year preceding the initiation of the new contract, and to simply move those employees forward through the newly awarded salary scales and longevity entitlements.

> Thus, both reductions in costs resulting from retirements or otherwise, as well as any increases in costs stemming from promotions or additional new hires would not effect [sic] the costing out of the award required by the new amendments to the Interest Arbitration Reform Act.
>
> [New Milford, supra, P.E.R.C. No. 2012-53, 38 N.J.P.E.R. ¶340, 2012 N.J. PERC LEXIS 18 at 15.]

NJLESA argues that this passage prevents an arbitrator from adopting a scattergram that contains "speculative" figures.

NJLESA also points to a passage in City of Atlantic City, where PERC said:

> We further clarify that the above information must be included for officers who retire in the last year of the expired agreement. For such officers, the information should be prorated for what was actually paid for the base salary items. Our guidance in New Milford for avoiding speculation for retirements was applicable to future retirements only.
>
> [City of Atlantic City, supra, P.E.R.C. No. 2013-82, 39 N.J.P.E.R. ¶161, 2013 N.J. PERC LEXIS 38 at 10.]

NJLESA argues that this passage requires an arbitrator to use actual paid salary when that data is available. NJLESA notes that the retirements in fiscal years 2012 and 2013, which enabled the State to realize savings, were not speculative because they actually occurred. NJLESA, thus, argues that the arbitrator should have used its scattergram, which reflected the

State's savings from those retirements, and thus showed more salary available for distribution to NJLESA members under the 2% salary cap.

NJLESA's argument fails for two reasons. First, PERC specifically rejected it:

> We note that <u>the cap on salary awards in the new legislation does not provide for the PBA to be credited with savings that the Borough receives from retirements or any other legislation that may reduce the employer's costs</u>. It is an affirmative calculation based on the total 2011 base salary costs regardless of any changes in 2012. Likewise, the PBA will not be debited for any increased costs the employer assumes for promotions or other costs associated with maintaining its workforce.
>
> [<u>New Milford</u>, <u>supra</u>, P.E.R.C. No. 2012-53, 38 <u>N.J.P.E.R.</u> ¶340, 2012 N.J. PERC LEXIS 18 at 16 (emphasis added).]

Since <u>New Milford</u>, PERC has consistently maintained that the State's savings on salary expenditures may not be considered when calculating a salary award under the 2% salary cap, and PERC has never suggested otherwise. For example, immediately after <u>New Milford</u>, PERC explained that

> [t]he statute does not provide for a <u>majority representative to be credited with savings that a public employer receives from any reduction in costs</u>, nor does it provide for the majority representative to be debited for any increased costs the public employer assumes for promotions or other costs associated with maintaining its workforce.

> [Borough of Ramsey, supra, P.E.R.C. No. 2012-60, 39 N.J.P.E.R. ¶17 at 9 (emphasis added).]

More recently, PERC reiterated its guidance in New Milford, and rejected essentially the same argument advanced by NJLESA:

> Additionally, the [union] asserts that the arbitrator miscalculated longevity in 2014 because she failed to deduct the "offsetting decreased cost in longevity from employees who left the bargaining unit due to retirements, promotions and terminations from the base year 2013." We squarely addressed this issue in New Milford wherein we stated as follows:
>
> . . . .
>
> Based on the clear guidance we provided in New Milford, we reject the union's argument that the arbitrator miscalculated longevity for 2014 because she did not offset costs resulting from retirements.
>
> [City of Camden and IAFF Local 788, P.E.R.C. No. 2014-95 (2014) at 8-9 (emphasis added).]

A fair reading of Atlantic City does not change the analysis. That case involved a dispute over the base salary calculation for the twelve months preceding the expiration of the collective bargain agreement. City of Atlantic City, supra, P.E.R.C. No. 2013-82, 39 N.J.P.E.R. ¶161, 2013 N.J. PERC LEXIS 38 at 2. It did not purport to change the New Milford analysis, but instead reiterated it. Id. at 6-7. Accordingly, PERC's decision in this case was not arbitrary, capricious, or unreasonable because it conformed to New Milford and subsequent

11

decisions by refusing to credit NJLESA with savings from retirements or attrition.

Second, NJLESA misreads N.J.S.A. 34:13A-16.7(b) and ignores our standard of review. The language of the 2% salary cap provision prohibits an interest arbitrator from rendering an award that "increases base salary items by more than 2.0 percent of the aggregate amount expended by the public employer on base salary items for the members of the affected employee organization in the twelve months immediately preceding the expiration of the collective negotiation agreement subject to arbitration." N.J.S.A. 34:13A-16.7(b). The statute sets a maximum salary award, but does not require the arbitrator to award any specified amount or prescribe the methodology for calculating the salary award. As PERC recognized in New Milford:

> Arriving at an economic award is not a precise mathematical process. Given that the statute sets forth general criteria rather than a formula, except as set forth [in the two percent salary cap provision, N.J.S.A. 34:13A-16.7(b),] the treatment of the parties' proposals involves judgment and discretion and an arbitrator will rarely be able to demonstrate that an award is the only "correct" one.
>
> [New Milford, supra, P.E.R.C. No. 2012-53, 38 N.J.P.E.R. ¶340, 2012 N.J. PERC LEXIS 18 at 11.]

Thus, except for failure to comply with the 2% salary cap provision, we will not set aside an interest arbitration award for failure to apply a specific methodology. However, NJLESA does not suggest that the arbitrator's salary award exceeded the 2% salary cap. Instead, it argues that the arbitrator should have used its methodology and awarded a credit for the State's savings from retirements and attrition in fiscal years 2012 and 2013. NJLESA cites to no authority that required the arbitrator or PERC to do so. Rather, the relevant authority requires us to defer to PERC's decision to affirm the arbitrator's exercise of discretion, which was based on his special expertise in labor relations. See State v. Prof'l Ass'n of N.J. Dep't of Educ., 64 N.J. 231, 259 (1974). Stated differently, the deferential standard of review for interest arbitration awards does not permit us to substitute our judgment for PERC's judgment by requiring the arbitrator to adopt NJLESA's methodology.

In sum, contrary to NJLESA's argument, PERC's decision was not arbitrary, capricious or unreasonable. The decision fully comported with New Milford and its progeny, and the award complied with the 2% salary cap provision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION