**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3495-19

IN THE MATTER OF
BOROUGH OF
BERGENFIELD,

     Respondent-Appellant,

and

PBA LOCAL 309,

     Petitioner-Respondent.

_____

Argued June 9, 2021 – Decided October 5, 2021

Before Judges Ostrer, Accurso, and Enright.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2020-50.

John L. Shahdanian argued the cause for appellant (McCusker, Anselmi, Rosen & Carvelli, PC, attorneys; John L. Shahdanian, on the briefs).

Michael A. Bukosky argued the cause for respondent PBA Local 309 (Loccke, Correia & Bukosky, attorneys; Michael A. Bukosky and Corey M. Sargeant, of counsel and on the brief).

John A. Boppert, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General Counsel, attorney; John A. Boppert, on the statement in lieu of brief).

PER CURIAM

Borough of Bergenfield appeals from a decision of the Public Employment Relations Commission ordering it to cease and desist from refusing to sign the collective negotiations agreement drafted by the Bergenfield PBA Local No. 309 purportedly memorializing an interest arbitration award. Bergenfield refused to sign the new CNA because it does not believe the agreement accurately reflects the interest arbitrator's award. The PBA refused Bergenfield's entreaty that the parties return to the interest arbitrator for clarification, and instead filed an unfair practice charge against the Borough for its refusal to sign its draft of the new contract, as modified by the interest arbitration award.

The Commission acknowledged the parties do not agree on what the arbitrator awarded for the 2019 and 2020 contract years, and that the dispute only arose when the PBA presented the draft CNA for signature — after the fourteen-day period for appealing the award had expired. It determined, however, that as the Borough failed to appeal the award and does not dispute its

2

terms or cost calculations, the parties' disagreement over whether the Borough correctly implemented the step increases in 2019 and 2020 "is a matter of contract interpretation best dealt with through the CNA's grievance procedures" and "immaterial as to whether [the Borough] was obligated to sign the agreement drafted by the PBA pursuant to N.J.S.A. 34:13A-5.4(a)(6)," which prohibits public employers from "[r]efusing to reduce a negotiated agreement to writing and to sign such agreement." We cannot agree and thus, reverse and remand with directions for the parties to return to the interest arbitrator to clarify his award for incorporation in the CNA.

After the parties bargained to impasse over the terms of a CNA to replace their one-year agreement that expired on December 31, 2017, the Borough petitioned to initiate compulsory interest arbitration. PERC appointed an arbitrator, and the parties participated in a formal interest arbitration in late 2018, focusing on three main issues of impasse: the duration of a new CNA, salaries, and health benefit contributions. In his decision, the arbitrator noted the arbitration was governed by the Police and Fire Public Interest Arbitration Reform Act, N.J.S.A. 34:13A-14a to -21, requiring the award to comply with the Property Tax Levy Cap, N.J.S.A. 40A:4-45.44 to -45.47, and that the award was "issued in accordance with the 2% hard cap limitation" of N.J.S.A. 34:13A-

16.7 as well as "the 16g interest arbitration criteria to the extent deemed relevant," N.J.S.A. 34:13A-16(g).[1]

The PBA's final offer on duration and salary was a one-year contract extending from January 1, 2018 to December 31, 2018, with a 1.8% wage increase applied across-the-board to the salary schedules. The Borough's final offer was a four-year contract extending from January 1, 2018 to December 31, 2021, with no salary increase, no step increases and all bargaining unit members still in step to remain at the same step on the salary guide as they were on December 31, 2017, for the duration of the contract, with longevity payments frozen during the term of the contract.

The arbitrator awarded a three-year agreement from January 1, 2018 to December 31, 2020, noting when he did so "that the first year of the agreement under this award," 2018, had already passed, and that step increases and

---

[1] The 2% hard cap provision expired on January 1, 2018, pursuant to a sunset provision. See N.J.S.A. 34:13A-16.9; L. 2014, c. 11, § 4. Because the parties' CNA expired on December 31, 2017, the hard cap applied to this award. See N.J.S.A. 34:13A-16.9 (providing the hard cap "shall apply only to collective negotiations between a public employer and the exclusive representative of a public police department or public fire department that relate to negotiated agreements expiring on [January 1, 2011] or any date thereafter until or on December 31, 2017, whereupon, after December 31, 2017, the provisions of section 2 of P.L.2010, c.105 (C.34:13A-16.7) shall become inoperative for all parties except those whose collective negotiations agreements expired prior to or on December 31, 2017 but for whom a final settlement has not been reached").

longevity compensation had been paid in accordance with the expired 2017 contract, i.e., in accordance with past practice. As to salaries, the arbitrator determined the evidence as well as the continuity and stability of employment criterion supported "the maximum allowable award under the 2% cap," noting, however, that the parties did not agree as to the base salary calculation for 2017, which in accordance with N.J.S.A. 34:13A-16.7(b), serves as the baseline for calculating the 2% hard cap.

The arbitrator accepted the Borough's calculation of base salary "as of December 31, 2017 of $5,365,227.65 as the baseline for calculating the 2% hard cap,"[2] thus equating "to a permissible [additional] salary expense of $107,304.55 in 2018." He further found that step increases in the amount of $248,815.26 had already been paid in accordance with past practice in 2018, exceeding the cap by $141,510.71. The arbitrator further calculated that step increases and longevity compensation in accordance with past practice in 2019 would amount to $189,024.48, exceeding "the permissible spend of $109,450.64 by $79,573.84;" and in 2020 to $189,851.00, exceeding "the permissible spend of $111,639.65 by $78,211.35." The arbitrator thus calculated the total permissible

_____

[2] The PBA's base salary calculation as of the same date was $585,468.35 higher. The arbitrator rejected the PBA's calculation as not in accordance with N.J.S.A. 34:13A-16.7(a).

spend over the three-year term awarded as $328,394.84. Because step increases and longevity compensation of $248,815.26 had already been paid in 2018, the first year under the award, the arbitrator found only $79,579.58 remained to be awarded for 2019 and 2020.

The arbitrator thus concluded that

> application of the 2% hard cap formula over a three-year term supports the following Award: 2018-0% salary increase, full step increases, senior officer differential and longevity compensation (which have been paid); 2019-0% salary increase, step increases October 1, 2019 ($44,751.83), senior officer differential and longevity compensation in accordance with the Agreement in the amount of $10,017.35; 2020-0% salary increase, no step increases, senior officer differential and longevity increases in accordance with the Agreement in the amount of $13,888.75.

He accordingly entered a salary award, representing "the maximum salary increases that can be awarded under the cap on base salary increases with discretion limited to the distribution of those amounts" of:

> 2018 0% salary increase, full step increases, longevity and senior officer differential.
>
> 2019 0% salary increase, step increases October 1, 2019, longevity compensation and senior officer differential in accordance with the terms of the Agreement.

6

2020 0% salary increase, no step movement, longevity and senior officer differential in accordance with the terms of the Agreement.

The arbitrator also included two other provisions in the award important to this dispute. First, he noted that "[a]ll provisions of the existing agreement shall be carried forward except for those which have been modified by the terms of this Award." Second, he "calculated the net, annual economic change in base salary over the three-year term of the new agreement, as follows: 2018 – $248,815.26; 2019 – $54,769.18; 2020 – $13,888.75 (pursuant to N.J.S.A. 34:13A-16.7 A and B)."

Neither party appealed the award. The Borough represents it did not do so because it was satisfied with the arbitrator's decision. When the PBA presented a draft CNA for signature to the Borough, after the time for any appeal had expired, the Borough objected to the language proposed in Article III, Section 2 concerning the payment of salary increments. Specifically, the PBA's proposed draft provided:

> Increments shall be paid in accordance with past practice except that during the year 2019 only the Salary Step Increases, where applicable, shall be effective October 1, 2019. For the year 2020 there shall be no Step movement for salary increases.

The Borough contends the proposed language misstates the award by inclusion of the language that "[i]ncrements shall be paid in accordance with past practice." It notes the arbitrator did not include that language when he set forth the specific salary award over the life of the new contract, and his interest arbitration award modified past practice by delaying step increases until the fourth quarter of 2019 and eliminating them altogether for 2020, the final year of the contract. The PBA argues its draft is consistent with Article III, Section 2 of the 2017 contract, which provided that "[i]ncrements shall be paid in accordance with past practice" as modified by the arbitrator's award for the second and third years of the contract.

The PERC examiner who heard the PBA's summary judgment motion on the unfair practice charge agreed with the PBA that incorporating the "past practice" language into Article III, Section 2, the salary provision of the new CNA, was consistent with the interest arbitration award, and thus the Borough committed an unfair labor practice by refusing to sign the agreement. He rejected the Borough's claim, backed up by calculations of its chief financial officer, that the costs of implementing the award pursuant to the PBA's draft CNA would greatly exceed the costs specified by the interest arbitrator in his award.

The hearing examiner found the Borough "does not object to the terms of the CNA, but to the costs of implementing those terms." He concluded that "[t]o the extent the Borough is challenging the accuracy of the arbitrator's calculations under the 2% base salary cap," it was obligated to appeal the award, which it failed to do. And to the extent "the Borough is choosing to interpret the 2018-2020 CNA as only requiring it to pay the salary amounts set forth in the [interest arbitration] Award, that contract interpretation may be challenged by the PBA in accordance with the CNA's grievance procedures." The arbitrator concluded that the Borough's "interpretation, however, does not change the fact that the draft CNA's terms are consistent with the [interest arbitration] Award and must be signed by the employer" pursuant to N.J.S.A. 34A-5.4(a)(6).

PERC adopted the hearing examiner's decision. It acknowledged "the parties evidently disagree about the amounts required to be paid pursuant to the step increases dictated by the Award," and noted the Borough's argument that under the PBA's proposed draft contract, "the 2020 economic change will be over $240,000, a figure not consistent with the Award's allowance of a total spend or economic change of $13,888.75." The Commission nevertheless concluded the draft accurately reflected the interest arbitration award by carrying over into the salary provision the language from the 2017 CNA that

A-3495-19

"[i]ncrements shall be paid in accordance with past practice," and rejected the Borough's contention that accuracy also required inclusion of the terms of the award and the arbitrator's calculations of economic change, finding "no authority for the latter proposition."

The Commission reasoned that

> [t]he Arbitrator's calculations of economic change were based on the record evidence before him, and his calculations were "constructed based on evidence of financial conditions and personnel costs taken from a particular snapshot in time." City of Orange Twp., P.E.R.C. No. 2017-13, 43 NJPER 101 (¶31 2016). There is no support for the Borough's assertion that the Arbitrator's calculations would necessarily be the same at another snapshot in time, such as that addressed by the Borough's subsequent independent calculations and analysis nearly one year after the [interest arbitration] Award's issuance. In any case, that analysis was not presented to the Arbitrator. N.J.S.A. 34:13A-16f(3).
>
> Moreover, as the Borough did not appeal the Award and does not dispute its terms or cost calculations, the Borough's post-Award independent analysis can have relevance only with respect to the parties' ongoing disagreement as to whether the Borough correctly implemented the October 1, 2019 step increases in accordance with the Award. We agree with the Hearing Examiner that this is a matter of contract interpretation best dealt with through the CNA's grievance procedures, and that the Borough's argument is immaterial as to whether it was obligated to sign the agreement drafted by the PBA pursuant to N.J.S.A. 34:13A-5.4(a)(6).

A-3495-19

We cannot agree. This is not a disagreement over contract interpretation. It is a dispute over whether the draft contract presented by the PBA to Bergenfield accurately reflects the interest arbitration award rendered in a compulsory interest arbitration. As the only arbitrator who can resolve that dispute is the interest arbitrator who entered the interest arbitration award, we reverse PERC's decision mandating that Bergenfield sign the disputed draft and remand with direction that the parties return to the interest arbitrator to clarify his award.

"[C]ompulsory interest arbitration is a statutory method of resolving collective-negotiation disputes between police and fire departments and their employers." Hillsdale PBA Local 207 v. Borough of Hillsdale, 137 N.J. 71, 80, (1994). As our Supreme Court has explained, interest arbitration "involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and thus in effect writes the parties' collective agreement." N.J. State Policemen's Benevolent Ass'n, Local 29 v. Town of Irvington, 80 N.J. 271, 284 (1979) (emphasis added). The Court has instructed that "[i]t is to be distinguished from 'grievance' arbitration, which is a method of resolving differences concerning the interpretation, application, or violation of an already existing contract." Ibid. Compulsory interest arbitration is "a

11

statutorily-mandated procedure for resolving the terms of a new contract."

Hillsdale PBA Local 207, 137 N.J. at 80.

This clear distinction between compulsory interest arbitration and grievance arbitration was missed here. The only issue in this case is whether the PBA accurately copied down the new salary term the interest arbitrator wrote for the parties. The arbitrator's award reads as follows:

AWARD

1.  Duration. January 1, 2018 through December 31, 2020.

2.  Salary. 2018-0% salary increase, full step increases, longevity and senior officer differential; 2019-0% salary increase, step increases October 1, 2019, longevity compensation and senior officer differential in accordance with the terms of the Agreement; 2020-0% salary increase, no step movement, longevity and senior officer differential in accordance with the terms of the Agreement.

3.  Health Benefit Contributions. Fifteen (15%) of the cost of premiums.

4.  All other proposals by the Borough and the PBA not awarded herein are denied and dismissed.

5.  All provisions of the existing agreement shall be carried forward except for those which have been modified by the terms of this Award.

12

6.    Pursuant to N.J.S.A. 34:13A-16(f), I certify that I have taken the statutory limitation imposed on the local tax levy cap into account in making the award. My Award also explains how the statutory criteria factored into my final determination.

7.    I have also calculated the net, annual economic change in base salary over the three-year term of the new agreement, as follows: 2018-$248,815.26; 2019-$54,769.18; 2020-$13,888.75 (pursuant to N.J.S.A. 34:13A-16.7 A and B).

In his decision, the arbitrator makes clear "[t]he salary amounts awarded represent the maximum salary increases that can be awarded under the cap on base salary increases <u>with discretion limited to the distribution of those amounts</u>." (Emphasis added.)

As is immediately apparent from a review of the award, the interest arbitrator did not include the language that "[i]ncrements shall be paid in accordance with past practice," in the salary provision of the award. Instead, he noted only that "longevity and senior officer differential [be paid] in accordance with the terms of the [expired] Agreement" for 2019 and 2020. Bergenfield asserts that inserting the phrase "[i]ncrements shall be paid in accordance with past practice" into the new salary provision is inconsistent with the salary term the arbitrator wrote for the parties, and makes the provision ambiguous, at best, necessitating, if not correction, at least the inclusion of the interest arbitrator's

13

calculated costs of the step increases and longevity compensation for each year of the contract to make it an accurate reflection of the interest arbitrator's decision.

Bergenfield attempted to illustrate the error in the PBA's proposed salary term by presenting its CFO's calculations of the cost of increments paid in accordance with the PBA's draft. The Borough obviously hoped that a comparison between what the arbitrator calculated as the permissible additional spend in the second and third years of the contract — $54,769.18 for 2019 and $13,888.75 for 2020 — against the additional spend calculated in accordance with the PBA's proposed draft — $140,330.00 for 2019 and $265,294.00 for 2020 — would make clear the PBA had not accurately copied the interest arbitration award's salary term into its proposed CNA. Unfortunately, the hearing examiner and PERC misinterpreted Bergenfield's objection to the "past practice" language in the new salary provision as an objection "to the costs of implementing" the terms of the new contract and deemed Bergenfield's calculations of the cost of increments paid in accordance with the PBA's proposed salary term relevant "only with respect to the parties' ongoing disagreement" as to whether Bergenfield "correctly implemented the October 1, 2019 step increases in accordance with the Award," which they deemed a

contract interpretation issue appropriately resolved through grievance arbitration.[3]

The PBA proposed a salary term that incorporated a "past practice" clause the interest arbitrator did not include in his salary provision: "[i]ncrements shall be paid in accordance with past practice except that during the year 2019 only the Salary Step Increases, where applicable, shall be effective October 1, 2019. For the year 2020 there shall be no Step movement for salary increases." And it left out the "past practice" clause the interest arbitrator did include: that "longevity and senior officer differential [be paid] in accordance with the terms of the [expired] Agreement." Although the PBA's proposed salary term may appear, on first blush, to be a not inaccurate recapitulation of the interest arbitrator's salary award, a closer review of the interest arbitrator's award, including his careful calculations of "the maximum allowable award under the 2% hard cap," suggests the language does not accurately reflect his decision on the parties' salary impasse.

Specifically, the arbitrator determined that in 2018, the first year of the new contract, step increases and longevity compensation, which were paid in

---

[3] The parties have advised the PBA has since grieved the Borough's payment of increments due in 2019 and 2020.

accordance with past practice, cost Bergenfield $248,815.26, exceeding the 2% hard cap of $107,304.55 by $141,510.71. According to the interest arbitrator, if step increases and longevity compensation were awarded in accordance with past practice for the duration of the new contract, Bergenfield would pay $189,024.48 in 2019, "exceed[ing] the permissible spend of $109,450.64 by $79,573.84," and $189,851.00 in 2020, "exceed[ing] the permissible spend of $111,639.65 by $78,211.35."

Because the 2% hard cap limited the total permissible spend over the three-year term awarded to $328,394.84, the arbitrator made clear his "discretion [was] limited to the distribution" of that amount over the three-year term. As $248,815.26 of the available $328,394.84 had already been spent in the first year when step increases and senior officer differential were paid in accordance with past practice, he calculated only $79,579.58 remained available to him for distribution in 2019 and 2020. Employing that discretion, the interest arbitrator determined the salary award for 2019 and 2020 would consist in 2019 of "step increases October 1, 2019 ($44,751.83), senior officer differential and longevity compensation in accordance with the [expired] Agreement in the amount of $10,017.35," and in 2020 "no step increases, senior officer differential and longevity increases in accordance with the [expired] Agreement in the amount

16

of $13,888.75." As Bergenfield attempted to explain to the hearing examiner and PERC, the PBA's inclusion of the "past practice" language into the salary term, which the arbitrator did not include, would suggest a spend in 2020 of an amount much closer to the $248,815.26 in step increases and longevity differential the Borough paid in 2018, than the $13,888.75 the interest arbitrator awarded for 2020, limited to the longevity differential.[4]

Although not clearly explained in the parties' submissions, their dispute is over whether the interest arbitrator awarded bargaining unit members an amount of money in 2019 equal to what they would have received under the expired 2017 CNA had the 2019 step increase been delayed until October 1, in other words the monetary equivalent of a one-quarter step, or whether he decreed that those members would ascend on October 1, 2019 to their next step "in accordance with past practice" and remain there for 2020, the last year of the contract.

---

[4] We accordingly reject PERC's finding that the interest arbitrator's included calculations of economic change amount to nothing more than "evidence of financial conditions and personnel costs taken from a particular snapshot in time." They were instead the arbitrator's calculations demonstrating his award would not increase base salary by more than 2% per contract year for a three-year contract in accordance with Borough of New Milford and PBA Local 83, P.E.R.C. No. 2012-53, 38 N.J.P.E.R. ¶340, 2012 N.J. PERC LEXIS 18 at 13 (2012). See In re State, 443 N.J. Super. 380, 384-85 (App. Div. 2016).

Although the calculations the interest arbitrator included in his decision suggest the "past practice" language in the new CNA salary term does not accurately reflect the interest arbitrator's contract award, that decision is not one for this court. We decide only that the parties have a legitimate dispute over whether the PBA's proposed draft of the salary term is an accurate reflection of the salary term the interest arbitrator wrote for the parties. As it is readily apparent that Bergenfield could only be compelled to sign a contract that accurately reflected the interest arbitration award, we vacate PERC's order compelling the Borough to sign the PBA's draft and remand with directions for the parties to return to the interest arbitrator to clarify the award.

We add only the following. This was a compulsory interest arbitration over the terms of a new contract. The arbitrator decided the duration of the new contract and, in effect, wrote the new salary term for inclusion in the new CNA. See N.J. State Policemen's Benevolent Ass'n, 80 N.J. at 284. The failure of the hearing examiner and PERC to recognize this was a dispute over whether the PBA had accurately copied down the interest arbitrator's salary term instead of a disagreement over "the interpretation, application, or violation of an already existing contract," ibid., led both to conclude, erroneously, that the matter could be resolved through grievance arbitration.

Besides thwarting the legislative goal of ensuring the prompt resolution of labor disputes through compulsory interest arbitration, see Newark Firemen's Mut. Benevolent Ass'n v. Newark, 90 N.J. 44, 56 (1982), PERC's decision also overlooked that this award, in the words of the interest arbitrator, "represent[ed] the maximum salary increases that can be awarded under the [2% hard] cap" with his "discretion limited to the distribution of those amounts." Because the interest arbitrator was prohibited by statute from entering an award that would increase base salary by more than two percent of the prior year's expenditure, N.J.S.A. 34:13A-16.7, see In re State, 443 N.J. Super. 380, 384-85 (App. Div. 2016), PERC's decision that a grievance arbitrator could resolve the amounts due under the interest arbitration award, potentially resulting in salary increases exceeding the two percent hard cap, was error.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION