**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2705-22

TIANLE LI,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Defendant-Respondent.

_____

Submitted April 15, 2024 – Decided May 10, 2024

Before Judges Gilson and Jacobs.

On appeal from the New Jersey Department of Corrections.

Tianle Li, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Leo R. Boerstoel, Deputy Attorney General, on the brief).

PER CURIAM

Tianle Li (Li) appeals a final agency decision of the New Jersey Department of Corrections (DOC) finding her guilty and imposing discipline for committing a prohibited act: *.013, "unauthorized physical contact with any person, such as, but not limited to, physical contact not initiated by a staff member, volunteer, or visitor," in violation of N.J.A.C. 10A:4-4.1(a). We affirm.

We glean the facts and procedural history from the written record and preserved video recording. Li is an inmate housed at the Edna Mahan Correctional Facility (EMCF). On April 15, 2023, at approximately 8:50 p.m., Corrections Officer Cesare was present in a laundry room at the facility. Also in the room were inmates Li and Briann Lindsey, along with several other unidentified inmates. A video recording captured the incident. In the video, which does not contain audio, Cesare is seen facing the rear of the laundry room. Behind him to his left, Lindsey stands with her left hand resting on the lid of a washing machine, fingers touching a dial. Behind Cesare to his right, stands Li. Lindsey stares in the direction of Cesare when, without perceptible cause, Li suddenly moves towards Lindsey, grabs her hand, and wrests it from the dial. In response, Lindsey turns and pushes Li to the floor, where she lands on her

back. The commotion prompts Cesare to turn around and attempt to restore order, extending his arms in either direction to prevent Lindsey and Li from any further contact. Lindsey places her hands behind her back, in apparent compliance for handcuffing. As Cesare radios for assistance, the parties remain separated. Additional corrections officers arrive to escort Lindsey and Li from the laundry room.

Both inmates were initially charged with *.004, "fighting with another person," and prohibited act *.306, "conduct that disrupts or interferes with security or orderly running of the facility." Li's hearing occurred five days later. She declined assistance of substitute counsel, to call witnesses on her own behalf, or to confront adverse witnesses. However, post-hearing and without objection by the State, Li requested the video recording of the incident.

At the hearing, Disciplinary Hearing Officer (DHO) Hunter modified the initial charges to a single charge of prohibited act *.013, "unauthorized physical contact." The record reflects that Li entered a guilty plea to the single charge. The DHO summarized the evidence relied on and reached the final decision as follows: "[Inmate] physically bumped another inmate when she proceeded to turn on a washing machine that the other inmate turned off. [Inmate] admitted guilt to [*.013] [and] apologized. [DHO] relied upon to determine guilt." The

3

DHO then imposed discipline of thirty days in the Restorative Housing Unit. The penalty was suspended for sixty days with the condition that it would be permanently suspended if Li remained penalty-free during that sixty-day period. Li also received fifteen days' loss of phone privileges.

On May 3, 2023, Assistant Superintendent Fusaro (Fusaro) reviewed Li's appeal of the disciplinary hearing and upheld the DHO's decision. Fusaro noted that leniency was shown "through the suspension of sanctions associated with the charges [] received."

On appeal, Li raises four arguments:

POINT I

> DISCIPLINARY HEARING OFFICER ERRED IN APPLYING N.J.A.C. 10A:4-5.1(j) PROHIBITED ACT *[.]013 "UNAUTHORIZED PHYSICAL CONTACT WITH ANY ONE SUCH AS, BUT NOT LIMITED TO, PHYSICAL CONTACT NOT INITIATED BY A STAFF MEMBER, VOLUNTEER OR VISITOR" TO MY ACTION IN THIS MATTER.

POINT II

> THIS DISCIPLINARY CHARGE AND SANCTION ARE THE RETALIATION OF CORRECTIONS OFFICERS OF EDNA MAHAN CORRECTION[AL] FACILITY FOR WOMEN TO ME FOR MY COMPLAINTS AND GRIEVANCES ABOUT OFFICERS' MISCONDUCT.

4

POINT III

INMATE BRIANN LINDSEY'S ASSAULT ON 4/[1]5/2023 WAS PREMEDITATED.

POINT IV

DHO ERRED IN CONSIDERING THE WRONGFUL AND INJUSTICE [SIC] DISCIPLINARY CHARGE *[.]013 OF 10/24/2022 TO MAKE THE DECISION ON DISCIPLINARY CHARGE OF 4/15/2023 AND SANCTION OF 4/20/2023.

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). As we have long recognized, "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). "We [therefore] defer to an agency decision, and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is

particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). But our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010) (first quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002); and then citing Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)). Instead, "our function is to 'engage in "a careful and principled consideration of the agency record and findings."'" Ibid. (quoting Williams, 330 N.J. Super. at 204).

A hearing officer's findings must be "sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order." Blackwell, 348 N.J. Super. at 122 (quoting N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 377 (1950)). We review a decision of the DOC in a prisoner disciplinary proceeding to determine whether the record contains substantial evidence the inmate has committed the prohibited act, and whether in making its decision the DOC

followed the regulations adopted to afford inmates procedural due process.  See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995).

To find an inmate guilty of a prohibited act under N.J.A.C. 10A:4-4.1, a hearing officer must find substantial evidence of the inmate's guilt. N.J.A.C. 10A:4-9.15(a).   "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).  The substantial evidence standard permits an agency to apply its expertise where the evidence supports more than one conclusion.  See Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001).

Li's first and third points challenge the legal basis and factual findings for the underlying charge.  In support, she claims that on the day in question, Lindsey had her hand on the washing machine dial to stop Li's laundry during its rinse cycle, just as she had done two days before.  Li writes,

> ". . .  I pushed [the] button; she has no right to hinder me to do so.  I didn't touch her[.]  [M]oreover, no matter whether my handback [sic] touched her hand or not, my intention was to push the washing machine button to continue the rinse. I didn't push or had [sic] any intentional physical contact with her. [H]er premeditated assault incurred my self-defense of my right to resume the washing machine to complete my laundry."

A-2705-22

Having reviewed the record, we reject Li's first and third arguments, as there is substantial evidence to support the final charge and the DHO's findings. Even if Lindsey was attempting to stop the rinse cycle of Li's laundry, such action does not legally justify Li's reaction. The right of self-defense is not implicated in such a scenario. With Cesare near both inmates, the sensible and legal recourse was for Li to notify the officer.

In her second and fourth points, Li argues that these disciplinary charges were initiated in retaliation for grievances she previously filed against officers at EMCF. At her hearing before the DHO, Li did not raise retaliation as a defense. Instead, she pled guilty to a reduced charge and issued an apology. Moreover, there is no evidence in the record supporting a claim of retaliation. "Normally, we do not consider issues not raised below at an administrative hearing." In re Stream Encroachment Permit, Permit No. 0200-04-0002.1 FHA, 402 N.J. Super. 587, 602 (App. Div. 2008) (citing Bryan v. Dep't of Corr., 258 N.J. Super. 546, 548 (App. Div. 1992)). The record here consists of a video recording and statements made by parties witnessing those events. We see no basis to depart from this standing principal to explore speculative motivations that play no role in the adjudication here concerned.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2705-22